UNITED STATES of America ex rel. Cleveland HINES, Petitioner-Appellant,

v.

J. E. LaVALLEE, Superintendent, Clinton Correctional Facility, Dannemora, New York, Respondent-Appellee.

No. 1065, Docket 75–2039.

United States Court of Appeals, Second Circuit.

Argued May 30, 1975.

Decided Aug. 13, 1975.

Certiorari Denied Jan. 26, 1976.

See 96 S.Ct. 884.

---

**1110**

Jonathan J. Silbermann, The Legal Aid Society, New York City (William J. Gallagher, Federal Defender Services Unit, New York City, of counsel), for petitioner-appellant.

Margery Evans Reifler, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before CLARK, Associate Justice,* and HAYS and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Cleveland Hines, presently incarcerated at Green Haven Correctional Facility pursuant to a judgment of the New York Supreme Court, County of the Bronx, which was entered in December 1972 after a jury found him guilty of robbery, sexual abuse and other crimes, appeals from an order of the Southern District of New York, Robert L. Carter, *Judge*, denying his application for a writ of *habeas corpus*. The writ was sought on the grounds that the state trial court violated Hines' constitutional rights by permitting an in-court identification allegedly based on an impermissibly suggestive pretrial photographic array and by admitting an incriminatory statement obtained from him in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We affirm.

On July 13, 1972, Patricia Gareri was accosted, as she was leaving her parked car near the Botanical Gardens in the Bronx, by a man holding a knife who threw her to the ground, forced her to re-enter her car, and then robbed and raped her. During the incident, which lasted about 45 minutes, he advised her that he had been married 11 years and had 2 children. On the day after the attack Mrs. Gareri examined hundreds of photographs at the police station without seeing one she could identify as that of her assailant, whom she had described in minute detail, including his approximate age, height, weight, hair, eyes, skin, goatee, mustache and clothes, including the fact that he wore a hat.

On July 18, 1972, the police arrested Hines in the Botanical Gardens because he fitted the description of the attacker given to them by Mrs. Gareri. En route to the police station Hines, without having been given any *Miranda* warning, informed the officer, in response to questions designed to pass the time by seeking background data (i. e., his name, address, age, marital status), that he had been married 11 years and had 2 children. The police advised Mrs. Gareri of the arrest, the arresting officer telling her that he "was positive, he was sure the man they had was the one that [she] had described." Two days later, on July 20, the police showed Mrs. Gareri an array of 14 or 15 photographs from which, immediately upon seeing Hines' photo-

* Supreme Court of the United States, retired, sitting by designation.

graph, she promptly and without difficulty selected it as that of the man who had robbed and raped her. Hines' photograph was the only one in the group of a person wearing a hat.

A motion to suppress the photographic identification was denied by the state trial court, which found the procedure not so suggestive as to give rise to a substantial likelihood of misidentification. Similarly a motion by Hines to suppress the statement made by him following his arrest regarding his marital status and children was denied by the state court after a hearing in accordance with *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), on the ground that as a "pedigree" statement it was outside of the purview of *Miranda v. Arizona, supra.*

At trial Mrs. Gareri made a positive in-court identification of Hines as her assailant, testifying that she had observed Hines' face at close range during the incident and had deliberately studied it in order to be able to remember what he looked like and describe him later to the police. The court admitted her testimony and that of the arresting police officer regarding Hines' statement to each, respectively, that he had been married 11 years and had 2 children. An attempted alibi defense, based on testimony by Hines' wife to the effect that because of rain he had stayed home on the morning of the assault rather than go to the Mets baseball game, was rebutted by proof that it did not rain until after the time of the assault and that there was no Mets game on that day. The jury found Hines guilty. The conviction was affirmed by the Appellate Division, First Department, *People v. Hines,* 43 A.D.2d 679, 350 N.Y.S.2d 145 (1st Dept. 1973). Leave to appeal to the New York Court of Appeals was denied on January 16, 1974.

On April 22, 1974, Hines applied to the Southern District of New York for a writ of *habeas corpus* which was denied by Judge Carter in an opinion filed on December 26, 1974. With respect to Hines' claim that Mrs. Gareri's in-court identification was irreparably tainted by a constitutionally impermissible pretrial photographic identification, Judge Carter decided that, although the photographic array was both unnecessary and impermissibly suggestive, the circumstances, particularly Mrs. Gareri's observation of Hines in broad daylight for nearly 45 minutes, coupled with her motivation to remember and the certainty with which she identified him, satisfied the court that her in-court identification had been based on her own independent recollection and had not been tainted by the photographic identification. With respect to Hines' *Miranda* point, the district court, acknowledging that there was a conflict among circuits [1] regarding the admissibility of pedigree information from a suspect without a prior *Miranda* warning, decided to follow the Fifth Circuit rule, which would admit such statements, see *Farley v. United States,* 381 F.2d 357, 359 (5th Cir.), *cert. denied,* 389 U.S. 942, 88 S.Ct. 303, 19 L.Ed.2d 295 (1967).

## DISCUSSION

■ We have no difficulty in affirming the district court's determination that Mrs. Gareri's in-court identification of Hines was not tainted by her exposure to the impermissibly suggestive photographic array, in view of all of the circumstances demonstrating that her face-to-face identification at the trial was based on her own independent recollection. She had seen Hines' face for almost 45 minutes in broad daylight. As the victim of his attack she had a strong

1. The Fifth and Ninth Circuits have held *Miranda* inapplicable to such statements, *Farley v. United States,* 381 F.2d 357 (5th Cir.), *cert. denied,* 389 U.S. 942, 88 S.Ct. 303, 19 L.Ed.2d 295 (1967); *United States v. Menichino,* 497 F.2d 935 (5th Cir. 1974); *United States v. La-* *Monica,* 472 F.2d 580 (9th Cir. 1972), whereas the District of Columbia Circuit has reached the opposite conclusion, *Proctor v. United States,* 131 U.S.App.D.C. 241, 404 F.2d 819 (1968).

motive to memorize it. Her description of him, before seeing his photograph or seeing him again in the courtroom, was detailed and accurate. She was thoroughly cross-examined at trial. The totality of the circumstances amply support the district court's conclusion that there was no denial of due process. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *United States ex rel. Valentine v. Zeller*, 446 F.2d 857, 859 (2d Cir. 1971).

■ The admission of Hines' statement to the arresting officer to the effect that he had been married 11 years and had 2 children presents a more difficult question. That the information turned out to be incriminating can hardly be disputed; being identical to that volunteered by Hines to the victim of the crime, it provided a basis for an inference that Hines was the perpetrator. Hines argues, however, that the statement should have been excluded for the reason that the officer failed first to advise him of his constitutional rights and to secure a waiver as required by *Miranda v. Arizona, supra.* This requires a re-examination of the principles underlying *Miranda.*

In *Miranda* the Supreme Court provided a safeguard against violation of a suspect's constitutional rights by establishing a prophylactic rule to the effect that any information elicited by the police as the result of custodial interrogation of a suspect may not be introduced into evidence against him unless he has just been advised of and has waived certain basic constitutional rights. The breadth and simplicity of this judicially-created rule has the advantage of avoiding long and sometimes inconclusive inquiries into the circumstances surrounding the obtaining of a statement from a suspect held in custody, in order to determine whether the statement was coerced or the product of misunderstanding. Since almost any information obtained from a suspect, however innocuous it appears on its face, may prove to be incriminating, a broad application of the *Miranda* rule avoids the difficult and sometimes impossible task of determining whether the person in custody acted voluntarily and with an understanding of his rights. The safest and simplest course for an arresting authority, now usually followed, is to warn the suspect of his constitutional rights before any questioning at all whether or not it is investigative in nature. A person's name, age, address, marital status and similar data, while usually non-incriminatory in character, may in a particular context provide the missing link required to convict. On the other hand, information as to a suspect's identity is required immediately to enable the police to book and arraign the suspect and to permit the magistrate to determine the amount of bail to be fixed and whether persons claiming to be relatives should be allowed to confer with the suspect. Indeed, a suspect who refuses to furnish his name or address may be ordered by the court to furnish information that will facilitate his identification, such as fingerprints, see *Bonaparte v. Smith*, 362 F.Supp. 1315, 1318–19 (S.D.Ga.), *affd.*, 484 F.2d 956 (5th Cir. 1973) *cert. denied*, 415 U.S. 981, 94 S.Ct. 1572, 39 L.Ed.2d 878 (1974), photographs, see *Gilbert v. United States*, 366 F.2d 923, 932–33 (9th Cir. 1966), *cert. denied*, 388 U.S. 922, 87 S.Ct. 2123, 18 L.Ed.2d 1370 (1967), handwriting exemplars, see *Gilbert v. California*, 388 U.S. 263, 266–67, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), blood samples, see *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), or similar identifying data, and to participate in a properly constituted line-up with the aid of counsel, see *United States v. Wade*, 388 U.S. 218, 221–22, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Although data thus obtained may be distinguished from information as to identity furnished orally on the ground that the latter is testimonial in character, the line of demarcation is thin.

Despite the breadth of the language used in *Miranda*, the Supreme Court was

concerned with protecting the suspect against interrogation of an investigative nature rather than the obtaining of basic identifying data required for booking and arraignment. This view is confirmed by the most recent draft of the American Law Institute's Model Code of Pre-Arraignment Procedure § 140.8(5) (April 1, 1974), which would limit *Miranda*-type safeguards to "questioning designed to investigate crimes or the involvement of the arrested person or others in crimes" as distinguished from "non-investigative questioning." Accord *United States v. Menichino*, 497 F.2d 935, 939–42 (5th Cir. 1974); *United States v. LaMonica*, 472 F.2d 580 (9th Cir. 1972); contra, *Proctor v. United States*, 131 U.S.App.D.C. 241, 404 F.2d 819 (1968). Accordingly we hold that since the answer furnished by Hines to the arresting officer in respect to his inquiry regarding Hines' marital status constituted merely basic identification required for booking purposes, its admission was not barred because of the officer's failure to satisfy *Miranda's* warning-waiver procedure.[2]

 In any event, even if *Miranda* required that Hines' answer with respect to the period of his marriage and the number of his children should have been suppressed, the admission of the evidence in this case would be harmless error, *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The evidence of Hines' guilt was overwhelming. In addition to Mrs. Gareri's clear and unequivocal testimony identifying Hines and describing his commission of the crimes, there was corroboratory medical testimony, her detailed and accurate description of Hines immediately after the offense which led to his apprehension, his apprehension later in the vicinity of the attack, and the adverse inference to be drawn from his attempted use of a false alibi.

The judgment is affirmed.

---

**2.** We recognize that this exception to *Miranda* lends itself to the possibility of abuse by police who might, under the guise of seeking pedigree data, elicit an incriminatory statement. However, as long as the exception is limited to simple identification information of the most basic sort (e. g., name, address, marital status) the risk is minimal.