878 F.2d 1546
 UNITED STATES of America, Appellee,
v.
John DOE, a/k/a Lynn M. O'Brien, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
John DOE, a/k/a Randy S. Parmeter, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
John DOE, a/k/a Ralph Rios, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
John DOE, a/k/a Dominic Santini, Defendant, Appellant.
 Nos. 87-1620, 87-1621, 87-1666 and 87-1667.
 United States Court of Appeals,
First Circuit.
 Heard Feb. 27, 1989.
Decided June 30, 1989.
 
 Carolyn Grace, by Appointment of the Court, with whom Richard L. Nahigian, Boston, Mass., Michelle H. Blauner and Shapiro Grace & Haber, Boston, Mass., were on brief, for defendant, appellant Dominic Santini.
 Jose Antonio Pagan Nieves, Rio Piedras, P.R. by Appointment of the Court, for defendant, appellant Ralph Rios.
 Martha R. Reeves, by Appointment of the Court, with whom Law Office of Martha R. Reeves, Boston, Mass. was on brief, for defendant, appellant Lynn M. O'Brien.
 David R. Rogers, Decatur, Ga., on brief, for defendant, appellant Randy S. Parmeter.
 Antonio R. Bazan, Asst. U.S. Atty., Criminal Div., with whom Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., was on brief, for U.S.
 Before BREYER and TORRUELLA, Circuit Judges, and CAFFREY,* Senior District Judge.
 BREYER, Circuit Judge.
 
 
 1
 Dominic Santini, Lynn O'Brien, Ralph Rios, and Randy Parmeter appeal their convictions for unlawfully possessing marijuana with intent to distribute it (Counts I and II). Santini also appeals his conviction for using a social security number not assigned to him (Count III). The evidence in the record indicates that on November 14, 1986, all four appellants were sailing a British-registered sailboat called the Cirrus in the Caribbean, that a U.S. Navy destroyer with Coast Guard officers aboard stopped them, that the Coast Guard sought Britain's permission to board the Cirrus, that the Cirrus maneuvered dangerously close to the destroyer, that the Cirrus caught fire and sank, that several bales of marijuana rose to the surface, and that the Coast Guard rescued and arrested the four appellants. Despite this evidence, we must reverse the convictions of these four appellants. The Government based Count I of its indictment on the wrong statute, charging the appellants with a crime they did not commit. The Government failed to prove an essential element of Count II of its indictment--American citizenship--with legally competent evidence (the only evidence presented being statements obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). And, the Government similarly failed to present sufficient evidence in respect to essential elements of the specific crime it charged in Count III.
 
 I.
 Count I
 
 2
 Count I of the indictment reads as follows:
 
 
 3
 On or about November 14, 1986, on board a vessel subject to the jurisdiction of the United States on the high seas, the S/V Cirrus, and within the jurisdiction of this court, ... Dominic Santini, ... Randy Parmeter, ... Ralph Rios, ... and Lynn O'Brien, the defendants herein, aiding and abetting each other did knowingly, willfully, intentionally and unlawfully possess with intent to distribute approximately 8,000 pounds of marihuana ... The district of Puerto Rico was the point of entry where said defendants entered the United States following the commission of the aforesaid offense, all in violation of Title 18 United States Code, Section 2 and Title 21 United States Code, Section 955a(a) and 955a(f).
 
 
 4
 Since 18 U.S.C. Sec. 2 (1982) simply makes those who help commit a crime (e.g., those who aid or abet) guilty as principals, and 21 U.S.C. Sec. 955a(f) (1982) says only that a person violating Sec. 955a "shall be tried in the United States district court at the point of entry," Count I, insofar as it charges a crime, charges a violation of 21 U.S.C. Sec. 955a(a) (1982).
 
 
 5
 The relevant statute, 21 U.S.C. Sec. 955a(a), reads as follows:
 
 
 6
 It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States on the high seas, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.
 
 
 7
 This statute makes it a crime knowingly to possess drugs with intent to distribute them on board (a) "a vessel of the United States," or (b) "a vessel subject to the jurisdiction of the United States."
 
 
 8
 The Government concedes that the Cirrus was not "a vessel of the United States." Neither is it "a vessel subject to the jurisdiction of the United States," for that phrase, as specifically defined in 21 U.S.C. Sec. 955b(d) (1982), refers only to stateless vessels and the equivalent. Since the record contains no evidence that the Cirrus falls within the statutory language setting forth the elements of the crime that the indictment charges, the district court should have granted the appellants' motion for a directed verdict of acquittal. United States v. Miller, 471 U.S. 130, 138, 105 S.Ct. 1811, 1816, 85 L.Ed.2d 99 (1985) (defendant cannot be convicted of an offense not contained in the indictment); Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); United States v. Young, 730 F.2d 221, 224 (5th Cir.1984) ("if a federal offense may be predicated upon alternative bases of jurisdiction, a defendant's conviction cannot rest upon a basis of jurisdiction different from that charged in the indictment"). United States v. Molinares-Charris, 822 F.2d 1213, 1216 (1st Cir.1987) ("Each of the four offenses in section 955a focuses on a different jurisdictional basis: the vessel's nationality, the citizenship of those on board, the waters in which the vessel sails, or that it is the United States to which the illegal cargo is intended to be imported"); United States v. Christensen, 732 F.2d 20, 23 (1st Cir.1984) ("21 U.S.C. Sec. 955a(a)-(d) state separate offenses because each section requires some factual proof not required by another").
 
 
 9
 The Government, in essence, admits it made a mistake. But, it asks us to uphold the conviction anyway on the ground that the indictment would have charged the crime it proved had the indictment referred to a new and different statute, 46 U.S.C.App. Sec. 1903(a) (Supp.1989). This new statute, using the similar words "vessel subject to the jurisdiction of the United States," defines those words differently so that they now include a "vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law." 46 U.S.C.App. Sec. 1903(c)(1)(C). The government says that it proved this latter condition satisfied; and that its failure to refer to the correct statute is therefore "harmless error." It points to Fed.R.Crim.P. 7(c)(3) which says that
 
 
 10
 Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice.
 
 
 11
 The problem with the Government's argument is that it fails to recognize that the Government made not one, but two, errors of citation. The first of these errors consists of its citation to the provision of Sec. 955a that makes it a crime to possess drugs on an American or stateless vessel, instead of referring to a different part of Sec. 955a, namely Sec. 955a(c), which (through a complicated cross-reference to an unusual definition of the words "customs waters") makes it a crime to possess drugs on a foreign vessel where the foreign nation permits U.S. prosecution. See United States v. Robinson, 843 F.2d 1, 2 (1st Cir.) ("if a foreign government 'by treaty or other arrangement' permits the United States 'to enforce [its laws] upon ... [a] vessel upon the high seas' the waters around the vessel become 'customs waters,' and 21 U.S.C. Sec. 955a(c) then forbids drug possession"), cert. denied, --- U.S. ----, 109 S.Ct. 93, 102 L.Ed.2d 69 (1988). This error is not simply an error of miscitation; it is not as if the indictment set forth a crime, but then, independently, referred to the wrong statute. Rather, the indictment charges a complete crime only through its reference to the statute. One reading it would simply think the indictment charged the crime of possessing drugs on an American or stateless vessel, not on a foreign vessel. And, as we have specifically held, the two crimes are different. United States v. Molinares-Charris, supra; United States v. Christensen, supra. Thus, Rule 7(c)(3)'s "harmless error" rule does not apply. Regardless, given the fact that a defendant reading the indictment would find it impossible to know that the Government was charging a "foreign vessel/with permission" drug crime, we cannot say this mistake was "harmless," or that defendants were not "misled to their prejudice." See United States v. Miller, 471 U.S. at 138-39, 105 S.Ct. at 1816 (1984); Stirone v. United States, 361 U.S. at 217, 80 S.Ct. at 273; United States v. Santa-Manzano, 842 F.2d 1, 2-3 (1st Cir.1988).
 
 
 12
 The Government made a second error when it charged violations of 21 U.S.C. Sec. 955a itself. At the time the crime was committed, November 14, 1986, the cited statute was no longer law. Congress had amended it, and it was recodified at 46 U.S.C.App. Sec. 1903, effective November 10, 1986. Were only this second error involved, had the Government charged the correct crime but simply referred to the then amended and recodified statute making criminal the same thing, perhaps the Government could invoke Rule 7. Cf. United States v. Mena, 863 F.2d 1522, 1527 (11th Cir.1989) (although at time of indictment and of the commission of the crime, 21 U.S.C. Sec. 955a had been amended, defendants could be charged with violations of these statutes). But, Rule 7 does not apply to the more serious error we have discussed in the previous paragraph, the error of writing an indictment that simply does not inform the defendants that the Government intends to prove the crime of possessing drugs on a foreign vessel.
 
 
 13
 Since the government did not present evidence of the crime it charged in Count I of the indictment, the district court should have entered a judgment of acquittal. We reverse the Count I convictions.
 
 II.
 Count II
 
 14
 Count II of the indictment reads as follows:
 
 
 15
 On or about November 14, 1986, on the high seas on board the S/V Cirrus, and within the jurisdiction of this court, ... Dominic Santini, ... Randy S. Parmeter, ... Ralph Rios, and ... Lynn M. O'Brien, the defendants herein, aiding and abetting each other and being citizens of the United States, did unlawfully, knowingly, and intentionally possess with intent to distribute approximately 8,000 pounds of marihuana.... The District of Puerto Rico was the point of entry where said defendants entered the United States following the commission of the aforesaid offense, all in violation of Title 18 United States Code, Section 2 and Title 21 United States Code, Section 955a(b).
 
 
 16
 The statute to which Count II refers, 21 U.S.C. Sec. 955a(b), (also amended and recodified as 46 U.S.C.App. Sec. 1903(a)) makes it a crime "for a citizen of the United States on board any vessel," to possess drugs with intent to distribute them. (Emphasis added.) The appellants argue that the Government introduced no lawfully obtained evidence that they were citizens of the United States. We think they are right.
 
 
 17
 The only evidence we can find in the record about appellants' citizenship consists of testimony given by Coast Guard Officer Jose Cruz. He testified that, after rescuing appellants from their burning ship, the Coast Guard handcuffed them and brought them aboard the destroyer. "Two guys with guns" escorted them on board and chained them to the deck. Cruz asked each defendant his or her name and citizenship. Each said that he or she was an American citizen. After (not before) this questioning, Cruz told each defendant about his or her right not to testify in accordance with Miranda v. Arizona, supra.
 
 
 18
 It is well established in law that government officers must give Miranda warnings "when questioning is initiated" once "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Beckwith v. United States, 425 U.S. 341, 347, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976) (quoting Miranda 384 U.S. at 444, 86 S.Ct. at 1612). A "custodial situation necessitating Miranda warnings arises ... where 'there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest'." United States v. Masse, 816 F.2d 805, 809 (1st Cir.1987) (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)). In this case, the appellants were handcuffed, then chained to the deck. It seems fair to say that they were in custody, that their movements were significantly restrained, that they were, in effect, under arrest. In fact, officer Cruz testified that appellants were not free to go, that they were detained.
 
 
 19
 On the other hand, a well-established line of case law authority (not mentioned by the Government) has created an exception to the Miranda rule for "routine booking interrogation," involving questions, for example, about a suspect's name, address, and related matters. United States v. Disla, 805 F.2d 1340, 1347 (9th Cir.1986) (routine gathering of background or booking information ordinarily does not constitute interrogation); United States v. Feldman, 788 F.2d 544, 554 (9th Cir.1986) (same), cert. denied, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); United States v. Mata-Abundiz, 717 F.2d 1277, 1280 (9th Cir.1983); United States v. Glen-Archila, 677 F.2d 809, 815 (11th Cir.), cert. denied, 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 137 (1982); United States v. Booth, 669 F.2d 1231, 1238 (9th Cir.1981); United States ex rel. Hines v. La Vallee, 521 F.2d 1109, 1112-13 (2d Cir.1975), cert. denied sub nom. Hines v. Bombard, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976). The Ninth Circuit, for example, has explained that such questions, even when asked after arrest, rarely elicit an incriminating response. United States v. Mata-Abundiz, supra. They "do not, by their very nature, involve the psychological intimidation that Miranda is designed to prevent." United States v. Booth, 669 F.2d at 1237. At the same time, they serve a legitimate administrative need. United States ex rel. Hines v. La Vallee, 521 F.2d at 1112. The district court apparently relied upon this exception in admitting the evidence of citizenship, for it wrote that the question about citizenship was "routine and reasonable," given the "security need to properly and fully identify ... the defendants" on a "war vessel."
 
 
 20
 The cases that create this exception, however, note that it does not apply where the law enforcement officer, under the guise of asking for background information, seeks to elicit information that may incriminate. United States v. Mata-Abundiz, supra ("If, however, the questions are reasonably likely to elicit an incriminating response in a particular situation, the exception does not apply."); United States v. Disla, 805 F.2d at 1347; United States v. Glen-Archila, 677 F.2d at 816; United States v. Booth, 669 F.2d at 1238. The question is an objective one; the officer's actual belief or intent is relevant, but it is not conclusive. United States v. Disla, supra; United States v. Mata-Abundiz, supra; United States v. Booth, supra.
 
 
 21
 Assuming the existence of a Miranda exception for "simple identification information of the most basic sort (e.g., name, address, marital status)," United States ex rel. Hines v. La Vallee, 521 F.2d at 1113 n. 2, we do not believe that exception applies here. For one thing, the administrative need for initial background questioning seems less great here than typically present at a police station, where one officer may book a suspect in one room before another questions the suspect at greater length elsewhere. Here, the same officer asked the identification questions as the substantive questions, and the record suggests that he could easily have offered a Miranda warning before asking about citizenship. For another thing, questions about citizenship, asked on the high seas, of a person present on a foreign vessel with drugs aboard, would (in our view) seem "reasonably likely to elicit an incriminating response." United States v. Mata-Abundiz, supra. When, or whether, the United States can prosecute a person found on such a ship is not immediately obvious; and the possibility that prosecution will turn upon citizenship is great enough (and should be well enough known to those in the drug enforcement world) that Coast Guard officers ought to know that answers to such questions may incriminate. In this particular case, the likelihood of an incriminating response was rather evident.
 
 
 22
 The Government's argument on this point consists of the following:
 
 
 23
 Appellants were brought aboard the U.S.S. King after they had attempted to ram the Navy ship and later set their own ship on fire and abandoned the same. This was quite a display of aggressive behavior, to say the least. They were detained and tied to the deck. Petty Officers [sic] Cruz asked their names and nationalities. By November 14, 1986, Title 46, United States Code, Section 1903, was already in effect and the fact that defendants stated their nationalities in no way could have affected them, although Appellee acknowledges error and submits appellants were indicted under the old law in a two count indictment. Fortunately, all were sentenced to concurrent terms of imprisonment on each of the counts they were sentenced.
 
 
 24
 Furthermore, appellee submits that at the time appellants were detained they were aboard a military vessel serving as a platform for Coast Guard operations. The least that could be asked from them was for their identification and nationalities. These were minimally intrusive questions that sooner or later they would have to answer either as detainees or persons under arrest. It should be noted that prior to that appellant Dominic Santini stated on the radio that the three crew members on board the S/V Cirrus were U.S. citizen [sic].
 
 
 25
 We can find nothing additional in this argument that offers any legally sufficient justification for failing to give timely Miranda warnings. If the Government means that the conduct of defendants or the fact that they were aboard a war ship created some sort of special circumstance (which the district court called "exigent circumstances"), we fail to find any circumstance that justified asking about citizenship before offering the warning. Cf. New York v. Quarles, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) ("public safety" exception to Miranda warnings, where there is an objectively reasonable need to protect the police or the public from immediate danger associated with a weapon). How does asking about citizenship lead one already in custody to behave less "aggressively?" How did the fact of citizenship relate to the fact that they were aboard a war vessel? Would they have received free run of the ship if, for example, they had said they were Dutch?
 
 
 26
 If the Government means that admission of the answers into evidence was somehow harmless, it is wrong. The record contains no other evidence that the appellants were American. The Government says that Santini said on the radio, when talking to the destroyer, that three of his crew members were American. But, the Government fails to mention that the district court excluded evidence of this conversation (in respect to the truth of what Santini said) as hearsay. Fed.R.Evid. 801, 802.
 
 
 27
 Thus, we conclude that the questioning officer should have issued a Miranda warning before asking the defendants about citizenship. Since he failed to do so, the court should not have admitted the answers to the question into evidence. We must set aside the conviction. Thus, we vacate the court's judgment. See United States v. Porter, 807 F.2d 21 (1st Cir.1986) (if it is determined on appeal that district court should not have admitted unlawfully obtained evidence, new trial permissible whether or not remaining evidence would have proved sufficient to support verdict), cert. denied, 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987); United States v. Key, 725 F.2d 1123 (7th Cir.1984) (same).
 
 III.
 Count III
 
 28
 The Government, in Count III of the indictment, charged that,
 
 
 29
 On or about November 19, 1986, in the District of Puerto Rico and within the jurisdiction of this Court ... Dominic Santini, the defendant herein, with the intent to deceive did falsely represent as his own social security number SSn xst-ga-gefpat San Jan, Puerto Rico ... when [he] ... well knew that such Social Security number was not assigned to him; all in violation of Title 42 United States Code, Section 408(g)(2).
 
 
 30
 The Government's evidence consisted of the following three items:
 
 
 31
 a) a social security card with the name Dominic Santini and the number vyy-bh-xnbf
 
 
 32
 b) a certification from the federal Department of Health and Human Services that this number belonged, not to Santini, but to a different person;
 
 
 33
 c) testimony from Coast Guard officer Cruz, stating:
 
 
 34
 Q: In what way or fashion did you obtain that Social Security card from Dominic Santini?
 
 
 35
 A: The same way I did [from] ... Lynn O'Brien. I asked [him] to give [me his] ... personal items so I could take custody of them.
 
 
 36
 Santini now argues that at least this third piece of evidence amounts to evidence of a "testimonial act," an act that falls within the scope of the Fifth Amendment's protection against self-incrimination. And, since the act (the turning over of the card) took place prior to the officer's having issued a Miranda warning, neither the act nor the card itself is admissible. The Government offers no response whatsoever to this argument.
 
 
 37
 We can find no constitutional obstacle to admission into evidence of the social security card itself. Case law makes clear that the Government can "seize" personal effects, such as billfolds, from a person whom it takes into custody, at least, where, as here, the Government does so as part of routine administrative procedure designed to inventory and safeguard those items pending eventual return to the person in question. See Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (reasonable to search personal effects of a person under lawful arrest as part of administrative procedure at a police station house incident to booking and jailing the suspect); South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (same); United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) (same). And, appellant does not explain how the card itself could be excluded on Fifth Amendment grounds.
 
 
 38
 The act of handing the card over to Cruz, used as evidence that Santini considered the card a "personal belonging," raises more difficult questions. See United States v. Doe, 465 U.S. 605, 612, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984) (act of producing records might have testimonial aspects independent of content of records themselves); Fisher v. United States, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976) (same); In re Grand Jury Proceedings, 814 F.2d 791, 793 (1st Cir.1987) (same); In re Kave, 760 F.2d 343, 355 (1st Cir.1985) (compelled production of private papers prohibited only if there are testimonial aspects to the act of production itself). But, they are questions we need not answer.
 
 
 39
 We must reverse the conviction regardless of the answers for the simple reason that we can find no evidence whatsoever in the record that Santini, "on or about November 19, 1986, in the District of Puerto Rico," falsely represented that this social security number was his, with an intent to deceive, see United States v. Darrell, 828 F.2d 644, 647 (10th Cir.1987) (to prove a violation of 42 U.S.C. Sec. 408(g)(2), the government must prove that defendant (1) for any purpose, (2) with intent to deceive, (3) represented a particular social security account number to be his, (4) which representation is false). Indeed, how could he possibly have done so, since he gave the social security card to a Coast Guard officer five days earlier? For this reason, the district court should have granted Santini's motion for a directed verdict of acquittal, Fed.R.Crim.P. 29, when he raised this very point.
 
 
 40
 We recognize that Santini has not squarely pressed this point on appeal; he concentrates on arguing that once we exclude the card then there is no evidence that he committed the crime. But, we are prepared to overlook that fact in this case for the following reasons. First, the record is simply devoid of evidence that Santini misused a social security number at the time and place in question. Second, Santini raised the point below, giving the Government adequate opportunity to rectify the deficiency. Third, even if one were, for the sake of argument, to consider the date, November 19, a slip of the pen, the record contains little, if any, evidence that Santini ever misused the card with "intent to deceive." United States v. Darrell, supra. It reveals only that Santini handed the card over to Officer Cruz when requested to do so after his arrest. Fourth, the "social security" count is, in a sense, a small, perhaps barely noticed, part of a larger case. Fifth, the Government has not responded at all on appeal to Santini's claim that his Count III conviction is erroneous. And, we therefore can take the government as having conceded error. United States v. Kobrosky, 711 F.2d 449, 454 (1st Cir.1983) (matters not briefed or argued on appeal deemed waived); Raxton Corp. v. Anania Associates Inc., 668 F.2d 622, 624 (1st Cir.1982) (an appellee is obliged to present on appeal "viable justifications of a judgment").
 
 
 41
 For these reasons, even though we normally are reluctant to consider an issue that appellant has not specifically raised and briefed, we believe that appellant adequately raised it here, and that not considering the issue would result in a miscarriage of justice. See Government of the Virgin Islands v. Petersen, 684 F.2d 247, 249 n. 3 (3d Cir.1982) (Although Court of Appeals will generally not consider matters not raised by appellant in its brief, it is within its discretion to do so "to vindicate ... evenhandedness in the administration of justice"), cf. United States v. Krynicki, 689 F.2d 289, 292 (1st Cir.1982) (although ordinarily court of appeals will not hear an issue not raised below, court has discretion to examine an issue raised for the first time on appeal if declining to hear the argument would result in a miscarriage of justice).
 
 
 42
 The judgments of conviction under Counts I and III are reversed.
 
 
 43
 The judgments of conviction under Count II are vacated and remanded for proceedings consistent with this opinion.
 
 
 44
 TORRUELLA, Circuit Judge (Concurring in part; dissenting in part).
 
 
 45
 I concur with Parts I and III of the decision of the court, but dissent as to Part II.
 
 
 46
 I am of the opinion that it was proper to admit into evidence at trial the statements by appellants regarding their citizenship, prior to their being advised of their rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). (1) Such inquiry is part of the identification procedure permitted as an exception to Miranda, (2) the circumstances of this case required that this information be sought without delay, and (3) this information would have been discovered eventually, irrespective of appellants' failure to answer such questions.
 
 
 47
 Although citizens have a right to refuse to identify themselves when stopped by the police, Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), I am unaware of any case holding that if they answer this inquiry, even after arrest and even if the answer is incriminating, that the resulting evidence is per se inadmissible. United States v. Feldman, 788 F.2d 544, 554 (9th Cir.1986); United States v. Mata-Abundiz, 717 F.2d 1277, 1280 (9th Cir.1983); United States v. Glen-Archila, 677 F.2d 809, 815 (11th Cir.1982); United States v. Booth, 669 F.2d 1231, 1238 (9th Cir.1981); United States ex rel. Hines v. La Vallee, 521 F.2d 1109, 1112-13 (2d Cir.1975). Furthermore, even in factual circumstance of less exigency than the present one, the clear trend has been to allow the almost indiscriminate seizure of persons, even within the borders of the United States, to inquire as to their citizenship without the need to invoke Miranda warnings. See United States v. Martinez Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); United States v. Montoya de Hernandez, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985). Cf. Lopez Lopez v. Aran, 844 F.2d 898 (1st Cir.1988). I fail to see any practical difference between seizing someone and asking their citizenship and arresting a subject and inquiring regarding citizenship.
 
 
 48
 The facts of this case point to the necessity for questioning as to appellants' citizenship because of legitimate maritime and administrative reasons. Here, a United States warship had literally fished four persons from international waters, after a near collision with the foreign registered vessel abandoned by appellants as it sank. Shortly before the sinking, the vessel's captain had informed the naval vessel that United States nationals were on board. Because international repercussions could result from this sinking, and to allow the naval vessel's crew to evaluate the necessity of taking special security precautions by reason of the presence of foreign nationals aboard, it was appropriate to allow this unobtrusive inquiry. This was a legitimate and necessary probe mandated by the circumstances. I suggest also that as a matter of historic maritime practice a citizenship inquiry would be made by the master of any vessel taking aboard anyone in international waters. Conversely, it is also a valid and longstanding practice when a vessel is boarded by naval or coast guard authorities to inquire into the citizenship of those aboard. The discovery of incriminating evidence from such inquiry is totally subsidiary to valid maritime and administrative needs sanctioned by these longstanding maritime traditions and practices, and is unaffected by constitutional prohibitions. The ruling today will have far reaching consequences upon a practice that has existed since long before the Constitution was enacted.
 
 
 49
 One additional point is overlooked by the majority. Persons boarding a vessel in the high seas in effect are entering the equivalent of that nation's territory. See United States v. Flores, 289 U.S. 137, 155, 53 S.Ct. 580, 584, 77 L.Ed. 1086 (1933). Just as in the case of any border crossing, the receiving nation has a right to inquire into the citizenship of any person entering its territory. This inquiry has never been held to be subject to Miranda restrictions. As a corollary to this, even if inquiry had not been made immediately upon boarding of the naval vessel, such inquiry would have been appropriate upon appellants' entry at the first port of arrival in the United States.
 
 
 50
 Last, other admitted evidence (appellants' names and home addresses, airplance tickets, and credit cards), although not definitive, was sufficient to allow the jury to reach a conclusion regarding appellants' citizenship. Furthermore, this information would inevitably have led the authorities to the discovery of conclusive evidence of their citizenship. Cf. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).
 
 
 51
 For the above reasons I dissent from Part II.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation