USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 95-1871 UNITED STATES OF AMERICA, Appellant, v. AMADO FERNANDEZ VENTURA AND MILAGROS A. CEDENO, Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ David S. Kris, Attorney, with whom Guillermo Gil, United States ______________ _____________ Attorney, Antonio R. Bazan, Assistant United States Attorney, and Nina ________________ ____ Goodman, Attorney, were on brief for appellant. _______ Linda Backiel with whom Carlos Ramirez Fiol was on brief for ______________ _____________________ appellees. ____________________ May 30, 1996 ____________________ COFFIN, Senior Circuit Judge. After deplaning at San Juan _____________________ International Airport, defendants Amado Fernandez Ventura and Milagros Cedeno were questioned by Customs agents and arrested for illegally transporting money, in violation of 31 U.S.C.  5316. They filed a motion to suppress all inculpatory statements made in the absence of Miranda warnings, which was granted. The _______ government appealed. Having concluded that the district court applied an erroneous legal test, we remand for reconsideration of the suppression motion under the proper standard. BACKGROUND Facts _____ Because of his frequent travel between St. Maarten and Puerto Rico, Fernandez was on a "lookout" list kept by the Customs Service. On November 12, 1994, after clearing immigration, Fernandez was taken to a secondary Customs inspection area. One agent asked Fernandez if he was carrying any money; Fernandez responded "$8000." Another agent searched his suitcase, discovered women's lingerie, and asked whom it belonged to. Fernandez answered "mi mujer," which colloquially means "my wife" or "my woman." Fernandez was directed to find her. Cedeno, Fernandez's girlfriend, had already cleared customs but was still within the customs area. Fernandez, while accompanied by an agent, located Cedeno and returned with her to the secondary inspections area. On the way there, the agent -2- asked Cedeno whether she was carrying any money. She replied that she was carrying approximately $9,000.  A search of the defendants revealed that the actual amount in their possession was $16,166. In response to further questioning, Fernandez revealed that the money belonged to his money exchange company, of which he was president. The agents then placed the couple under arrest and read them their Miranda _______ rights.  The defendants were charged with failing to report the transportation of monetary instruments in excess of $10,000 in violation of 31 U.S.C. 5316, and making false statements to the Customs Service in violation of 18 U.S.C. 1001. Upon their motion alleging a Miranda violation, the court suppressed all _______ statements made by the defendants after Cedeno was asked whether she was carrying any money. See United States v. Fernandez ___ _____________ _________ Ventura, 892 F. Supp. 362 (D.P.R. 1995).  _______ The District Court's Opinion ____________________________ The district court delineated four relevant inquiries for determining whether the rule enunciated in Miranda v. Arizona, _______ _______ 384 U.S. 436 (1966), has been violated:  1. Was the person in "custody"? 2. Was the person "interrogated"? 3. Had the Fifth Amendment right against self- incrimination attached? 4. Had the Sixth Amendment right to counsel attached? Under the court's analysis, a violation occurs when "each element (custody, un-Mirandized interrogation, and attached Fifth and Sixth Amendment rights) . . . exist[s] simultaneously." -3- The court considered each factor. It stated that custody "depends exclusively upon whether a reasonable person in the defendant's position would have felt free to leave." Because "Customs is an inherently coercive environment [in that] an individual is never free to simply walk away," the court concluded that defendants were in "custody." In the court's view, "interrogation" was satisfied because "[t]he parties do not dispute that all of the questioning conducted by Customs officers in this case constituted 'interrogation' as defined and explained in Rhode Island v. Innis, 446 U.S. 291 (1980)." ____________ _____ Most of the court's analysis focused on whether the rights to silence and counsel had attached. The court held that "in the context of Customs interrogation, these rights attach when the questioning has ceased to be purely investigatory and has become accusatory." Elaborating further, the court explained [This] has both an objective and subjective element. The objective element[] requires that officers provide Miranda warnings when there exists probable cause to _______ make an arrest . . . . The subjective element requires that officers provide Miranda warnings when it is _______ apparent that the interrogating officer's purpose in questioning is not purely investigatory. As applied in the Customs setting:  when the questioning extends beyond that asked of the average Customs interrogee at either primary or secondary inspection, we infer that the interrogation has become sufficiently focused upon the interrogee to require Miranda warnings. _______ Applying the facts to these legal standards, the court concluded that the "interrogation turned accusatorial at the time Inspector Fisher asked Cedeno whether she was carrying any -4- money." At that point, the "investigation had clearly narrowed to a particular crime with particular defendants, based on what we infer to have been substantial, particularized suspicions." Accordingly, the court determined, all ensuing statements violated Miranda, and were properly suppressed. _______ DISCUSSION The government claims that the court's test for a Miranda _______ violation was legally erroneous. Defendants concede that the court's approach was novel, but argue that, taken as a whole, it comports with settled precedent. Our task in this appeal is straightforward: to set forth the Miranda test as derived from _______ Supreme Court and First Circuit caselaw and assess whether the district court followed it. Our standard of review is de novo. __ ____ See United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994). ___ _____________ _____ Miranda warnings must be given before a suspect is subjected _______ to custodial interrogation. United States v. Taylor, 985 F.2d 3, _____________ ______ 7 (1st Cir. 1993). The custodial interrogation inquiry necessarily demands determination of its two subsidiary components: 1) custody and 2) interrogation. See Illinois v. ___ ________ Perkins, 496 U.S. 292, 297 (1990) ("It is the premise of Miranda _______ _______ that the danger of coercion results from the interaction of custody and official interrogation.").  The custody determination is the initial and, generally, the central inquiry: it is "the touchstone to the need for Miranda _______ warnings." United States v. Quinn, 815 F.2d 153, 160 (1st Cir. _____________ _____ 1987). Since Miranda, the Court has enunciated several general _______ -5- definitions of custody, but the ultimate inquiry is whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Thompson v. Keohane, ________ _______ 116 S. Ct. 457, 465 (1995) (quotation marks and citations omitted); Stansbury v. California, 114 S. Ct. 1526, 1529 (1994) _________ __________ (per curiam) (same).1 ___ ______ In order to assess the "restraint on freedom of movement," a court must examine all the circumstances surrounding the interrogation. This test is objective: the only relevant inquiry is "how a reasonable man in the suspect's shoes would have understood his situation."2 Stansbury, 114 S. Ct. at 1529 _________ (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)). The ________ _______ subjective beliefs held by the interrogating officers or the person being interrogated are not germane. Id.  ___ Relevant circumstances include "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the  ____________________ 1 This specific formulation was first articulated in California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) __________ _______ ___ ______ and Minnesota v. Murphy, 465 U.S. 420, 430 (1984). It served to _________ ______ clarify the Court's conception that Miranda applied after a _______ "person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at _______ 444 (footnote omitted). 2 In Keohane, the Court made clear that the ultimate _______ determination of custody is a mixed question of fact and law. The initial examination of the "totality of the circumstances" is factual. The second inquiry, however -- whether, objectively, these circumstances constitute the requisite "restraint on freedom of movement of the degree associated with a formal arrest" -- requires the "application of the controlling legal standard to the historical facts." 116 S. Ct. at 465 & n.11. -6- degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." United States v. _____________ Masse, 816 F.2d 805, 809 (1st Cir. 1987) (quoting United States _____ _____________ v. Streifel, 781 F.2d 953, 961 n.13 (1st Cir. 1986)). See also ________ ___ ____ United States v. Pratt, 645 F.2d 89, 90-91 (1st Cir. 1981) ______________ _____ (discussing factors in the context of a secondary customs search).3 Determining what constitutes custody can be a "slippery" task. See Oregon v. Elstad, 470 U.S. 298, 309 (1985). Through ___ ______ ______ case by case development, however, courts have carved out certain circumstances as legally insufficient to constitute custody. See, e.g., Berkemer, 468 U.S. at 437-40 (routine traffic stops ___ ____ ________ not subject to dictates of Miranda); United States v. Tajeddini, _______ _____________ _________ 996 F.2d 1278, 1288 (1st Cir. 1993) (routine Customs questioning); Pratt, 645 F.2d at 90-91 (same). Indeed, in the _____ Customs context, we have stated that questions from officials are especially understood to be a necessary and important routine for travelers arriving at American entry points. See Pratt, 645 F.2d ___ _____ at 90. See also United States v. Moya, 74 F.3d 1117, 1120 (11th ___ ____ _____________ ____ Cir. 1996). This understanding cuts against the potentially coercive aspect of the Customs inquiry, and lessens the need for Miranda warnings. In Pratt, we made clear that even _______ _____ secondary inspection does not per se constitute custodial ___ __  ____________________ 3 This is not an exhaustive list. Other courts have identified other factors significant to a custody determination. See Sprosty v. Buchler, 79 F.3d 635, 641 (7th Cir. 1996) (citing ___ _______ _______ cases). -7- interrogation. We acknowledged that though "[a]ny person required to submit to a secondary customs search may apprehend some increased level of official suspicion[,] . . . this perception . . . is not sufficient by itself to apply coercive pressures equivalent to custodial questioning." 645 F.2d at 90. There, we found that the limited and routine nature of the questioning and short duration of the encounter militated against requiring Miranda warnings. The line between routine Customs _______ questioning and custodial interrogation is not easily drawn, but it requires careful examination of all the circumstances.  The other component of custodial interrogation is, of course, interrogation. Interrogation refers to both express questioning and its "functional equivalent," which includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 _____________ _____ (1980) (footnotes omitted). Again the inquiry is objective: how would the officer's statements and conduct be perceived by a reasonable person in the same circumstances? See Taylor, 985 ___ ______ -8- F.2d at 7.4 Here, quite clearly, if defendants were in custody, the officers' express questions constituted interrogation.5 In summary, Miranda warnings ensure that an individual _______ subject to custodial interrogation has a "full opportunity to exercise the privilege against self-incrimination." Miranda, 384 _______ U.S. at 467. To find custodial interrogation, the court must first examine all the circumstances surrounding the exchange between the government agent and the suspect, then determine from the perspective of a reasonable person in the suspect's shoes whether there was 1) a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest and 2) express questioning or its functional equivalent. We will not dwell on all the problems in the district court's version of the Miranda inquiry, but point out a few _______ significant errors. First, the court took the ultimate factual and legal question -- were defendants in custody? -- and treated it in a per se manner: because travelers "may not simply walk ___ __  ____________________ 4 However, an officer's knowledge "'concerning the unusual susceptibility of a defendant to a particular form of persuasion might be an important factor in determining' what the [officer] reasonably should have known." Pennsylvania v. Muniz, 496 U.S. ____________ _____ 582, 601 (1990) (quoting Innis, 446 U.S. at 302 n.8).  _____ 5 We note that not all questioning of in-custody suspects constitutes interrogation triggering the Miranda protections. _______ For example, many courts recognize a "routine booking interrogation" exception to the Miranda rule. See United States _______ ___ _____________ v. Doe, 878 F.2d 1546, 1551 (1st Cir. 1989) (citing cases). ___ Requesting biographical information -- name, address, etc. -- ____ rarely elicits an incriminating response and serves a legitimate administrative need. Id. If, however, the officer seeks to ___ elicit information that may incriminate, the exception does not apply. Id. We express no opinion on whether this narrow Miranda ___ _______ exception applies in the Customs setting. -9- away from an interrogating officer," they are in custody. This is simply wrong. Individuals subject to routine traffic stops or customs inspections, circumstances which are not custodial, are rarely free to leave while being questioned by an officer. The relevant inquiry, however, as stated above, is whether there was an arrest or restraint on freedom of movement of the degree associated with a formal arrest.  The court's further assertion that "all reasonable people would agree that Customs is an inherently custodial setting, regardless of the circumstances of the interrogation," is directly contrary to our decisions in Tajeddini and Pratt and _________ _____ runs counter to the proper approach articulated by the Supreme Court. A custody determination requires inquiry into all ___ circumstances surrounding the interrogation. See Keohane, 116 S. ___ _______ Ct. at 465 & n.11.  Finally, we note that the court, relying on outmoded circuit opinions, discussed certain factors, such as whether there was probable cause to make an arrest and the officers' focus on the defendants, which are not relevant to a Miranda inquiry. At one _______ time, certain courts found these factors relevant, see, e.g., ___ ____ United States v. Henry, 604 F.2d 908, 915 (5th Cir. 1979) ______________ _____ (articulating a four-factor test for custody that included these factors), but subsequent Supreme Court decisions rejected this approach. See, e.g., Berkemer, 468 U.S. at 442 (emphasizing the ___ ____ ________ objective nature of the inquiry). Indeed, in light of these cases, the Fifth Circuit repudiated its four-factor test, -10- announcing that "[p]robable cause and focus become material to the custody inquiry only when they influence a reasonable person's perception of the situation." United States v. ______________ Bengivenga, 845 F.2d 593, 596-97, 597 (5th Cir. 1988) (en banc) __________ __ ____ (footnote omitted). Defendants argue that the court's test, taken as a whole, is consistent with our precedent. We disagree. Although there may be tests which, though formulated differently, approximate the proper standard, this is not one of them. Accordingly, we remand this case to the district court for application of the correct legal test. On remand, the court may take additional evidence on the relevant factual issues. See Streifel, 781 F.2d at 962. ___ ________ The order suppressing evidence is vacated. We remand to the ____________________________________________________________ district court for proceedings consistent with this opinion. ____________________________________________________________ -11-