ROGERS, Circuit Judge,
concurring in part and concurring in the judgment:
It is well established that law enforcement officers must give Miranda warnings when questioning is initiated once “ ‘a per *86 son has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ ” Beckwith v. United States, 425 U.S. 341, 347, 96 S.Ct. 1612, 1614-15, 48 L.Ed.2d 1 (1976) (quoting Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). The court does not decide whether Gaston was in custody when he was questioned by the police while in handcuffs prior to being informed of his Miranda rights. It holds that the questions Gaston was asked fall within the exception to Miranda recognized by the Supreme Court in Pennsylvania v. Muniz, 496 U.S. 582, 600-02, 110 S.Ct. 2638, 2649-51, 110 L.Ed.2d 528 (1990), for routine booking questions. See Op. at 81-82. I write separately to clarify two points regarding Gaston’s Fifth Amendment claim: first, whether Gaston was in custody when he was questioned by the police while in handcuffs; and second, whether Gaston’s Fifth Amendment rights were violated when the police asked him whether he resided in or owned the searched premises before advising him of his Miranda rights.
First, the cases relied on by the court to the effect that in determining whether a defendant is in custody the fact that he is in handcuffs is only one factor are not dispositive here. See Op. at 81-82 (citing United States v. Leshuk, 65 F.3d 1105, 1109-10 (4th Cir.1995); United States v. Bautista, 684 F.2d 1286, 1291-92 (9th Cir.1982)); see also United States v. Fountain, 2 F.3d 656, 666 (6th Cir.1993). Although, under this line of authority, the police acted reasonably in handcuffing all adults in the premises as a protective measure when executing the search warrant for a firearm, by the time the police officer questioned Gaston, without Miranda warnings, the initial justification for handcuffing him that is recognized in these cases, namely the officers’ safety, no longer existed. By this time, the police had located all persons who were in the premises and brought them to a central location in the premises, with at least three or four police officers (not including the officer who questioned Gaston) standing guard. There was no evidence to suggest that the police had any concern that these persons were armed, would be uncooperative, destroy evidence, or escape. Cf. Bautista, 684 F.2d at 1289-90. Under the circumstances, as “there was nothing to suggest that any of the officers were any longer concerned with their own physical safety,” Gaston was “in police custody.” New York v. Quarles, 467 U.S. 649, 655, 104 S.Ct. 2626, 2631, 81 L.Ed.2d 550 (1984). Unlike in the only case cited by the government in which a statement was taken at the premises from a defendant in handcuffs at the time of the execution of a search warrant, United States v. Newton, 181 F.Supp.2d 157, 160, 174 (E.D.N.Y.2002), Gaston was not informed that he was not under arrest or that the handcuffs were for his and the officers’ safety.
Second, the routine booking exception under Muniz applies only to questions that are necessary to assist the police in carrying out administrative functions. Muniz, 496 U.S. at 592-600, 602 n. 14, 110 S.Ct. at 2649-50, 2650 n. 14. In Muniz, the Supreme Court distinguished between routine booking questions “to secure the biographical data necessary to complete booking or pretrial services,” id. at 601, 110 S.Ct. at 2650 (citations omitted), and the type of question that, while related, goes beyond what is necessary for booking purposes. While the exception extends to questions “reasonably related to the police’s administrative concerns,” id. at 601-02, 110 S.Ct. at 2650, the Court instructed that “the police may not ask questions, even during booking, that are designed to elicit incriminating admissions.” Id. at 602 n. 14, 110 S.Ct. at 2650 n. 14 (citations omitted). The police not only had asked Muniz, who was suspected of driving while *87 intoxicated, questions about his name, address, height, weight, eye color, date of birth, and current age, but also asked whether he knew the date of his sixth birthday. Id. at 585-86, 110 S.Ct. at 2641-42. The Court held that the sixth birthday question was “testimonial in nature,” id. at 594, 110 S.Ct. at 2647, causing the defendant to “reveal, directly or indirectly, his knowledge of facts relating him to the offense,” id. at 595, 110 S.Ct. at 2647, and because that question was unnecessary for administrative purposes, it did not fall within the routine booking exception. Id. at 592-602, 110 S.Ct. at 2645-50.
The court holds that the questions Ga-ston was asked by the police fall within the routine booking exception under Muniz. See Op. at 81-82. As Muniz makes clear, whether a question falls within the exception depends on the particular circumstances. 496 U.S. at 602, 110 S.Ct. at 2650. When the police officer asked Ga-ston whether he resided in and whether he owned the premises being searched, the questions were potentially incriminating given the object of the search warrant, namely a firearm and any related paraphernalia at the premises. See United States v. Disla, 805 F.2d 1340, 1346-47 (9th Cir.1986); see also Muniz, 496 U.S. at 602, 110 S.Ct. at 2650; United States v. Doe, 878 F.2d 1546, 1551-52 (1st Cir.1989); United States v. Mata-Abundiz, 717 F.2d 1277, 1280 (9th Cir.1983); United States ex rel. Hines v. LaVallee, 521 F.2d 1109, 1112-13 (2nd Cir.1975). The court therefore must scrutinize the administrative need for the questions, applying an objective standard, particularly where, as here, the questioning did not occur at a police station. See Doe, 878 F.2d at 1551.
In support of its holding that the questions were related to administrative concerns, the court cites Fed.R.CRImP. 41(f)(3)(A), which requires that “[t]he officer executing the warrant must ... give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken.” (emphasis added). See Op. at. 82. On its face, the Rule would appear to indicate that there was a “legitimate administrative need,” Doe, 878 F.2d at 1551, to ask Gaston both whether he resided in and whether he owned the premises. However, once Gaston told the officer that he resided at the searched premises, the Rule simply required the notice of any property taken from his residence to be given to him or another occupant present at the time. It was unnecessary to determine if Gaston also owned the premises. The language of the Rule does not require the notice to be given to the property owner whenever the seized property is not taken from the immediate possession of the defendant or another occupant of the premises. Further, the ownership question was potentially incriminating. Although Gaston’s residence at the premises may suffice to establish his constructive possession of the seized items, to the extent it did not, then evidence of his ownership of the property would fill the eviden-tiary gap. See United States v. Heckard, 238 F.3d 1222, 1228-29 (10th Cir.2001); see also United States v. Mergerson, 4 F.3d 337, 348-49 (5th Cir.1993); United States v. Foster, 783 F.2d 1087, 1089-90 (D.C.Cir.1986); United States v. Whitfield, 629 F.2d 136, 142-43 (D.C.Cir.1980). Contrary to the suggestion of the court, the police did not need to perform “an analysis, based on the law of real property, of the difference between residency and ownership.” Op. at 82. Instead, consistent with the limited exception to the Miranda requirement that Muniz recognizes, the police had to limit their questioning to the information that was necessary for their legitimate administrative purposes. To the extent the Rule is the underpinning of the court’s conclusion that all of the ques *88 tions the police asked Gaston were within the Muniz exception, the Rule does not support the conclusion.
It is unnecessary, however, to resolve whether the ownership question falls within Muniz’s limited exception to the Miranda requirement. Even if Gaston was in custody when he was asked if he owned the premises and the question was unnecessary and potentially incriminating, and thus did not fall within Muniz’s routine booking exception, any error was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). At trial, the government used the evidence of Gaston’s ownership of the premises to show only that he resided at or possessed the premises as a means of linking Gaston to the seized contraband. There was ample other evidence that Gaston resided at the premises, including his clothes and receipts, and bills and other mail in his name. See Op. at 83. Under the circumstances, the court can confidently conclude that admission into evidence of Gaston’s statement concerning ownership, even if violative of his Fifth Amendment rights, had no effect on the jury’s verdict. Id.