**UNITED STATES of America, Appellee,**

v.

**Billy Richard GLAZE, a/k/a Jesse Sitting Crow, a/k/a Jesse Coulter, Appellant.**

**No. 88-5265.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 16, 1988.

Decided Jan. 19, 1989.

Daniel M. Scott, Federal Public Defender, Minneapolis, Minn., for appellant.

Richard E. Vosepka, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, FAGG, Circuit Judge, and REASONER,\* District Judge.

PER CURIAM.

Billy Richard Glaze was convicted by a jury on two counts of giving a false social security number with intent to deceive the Secretary of Treasury, in violation of 42 U.S.C. § 408(f). Glaze appeals the convic-

---

\* The HONORABLE STEPHEN M. REASONER, United States District Judge for the Eastern District of Arkansas, sitting by designation.

tion contending (1) that the massive ongoing media publicity accusing Glaze of being a "serial killer" prejudiced the jury; and (2) that there was insufficient evidence to sustain the verdict. We affirm the judgment of conviction.

In 1963, the Social Security Administration issued a social security number to a Billy Richard Glaze. In the 1960's Glaze drifted from job to job on the West Coast. In 1972, Glaze moved to the midwest. In 1973, he began using the name Jesse Sitting Crow. Glaze applied for a social security number under that name in 1978. On the application form he used a false birthplace, false parents and a different birth date by one day "to avoid the unlucky '13' of his actual birth date." In the late 1970's and 1980's he made ten requests for duplicate cards. Two were made in Minnesota.

## Jury Prejudice

After his indictment for the social security fraud Glaze moved for a change of venue and filed a motion for continuance. While in Minnesota Glaze became the chief suspect in a series of gruesome homicides of American Indian women. A front page article appeared in a Minnesota paper called the *City Pages* entitled "Bad Blood" in which Glaze's connection with the murders was discussed. KARE television aired twenty-five different news stories on a continuous basis referring to Glaze as a suspect. WCCO–TV ran twenty-six stories, some of which were shown as many as twelve times. KSTP aired similar stories. The *Star Tribune* ran periodic articles including a front page story on April 1, 1988. Other papers ran front page stories. His motions were denied.

On post-trial motion Glaze contends there was "inherent prejudice" because of the ongoing publicity. He asserts the jury could not deliver a fair verdict. Glaze requests a remand for a new trial.

■ Widespread or adverse publicity alone is insufficient to grant a change in venue. *Johnson v. Nix,* 763 F.2d 344, 347 (8th Cir.1985), quoting *United States v. McNally,* 485 F.2d 398, 403 (8th Cir.1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1566, 39 L.Ed.2d 874 (1974). We note the trial court's careful questioning of the veniremen concerning any possible jury prejudice.

[2] The trial court's findings of impartiality can be overturned only for "manifest error." *Patton v. Yount,* 467 U.S. 1025, 1031–32 & n. 7, 104 S.Ct. 2885, 2889 & n. 7, 81 L.Ed.2d 847 (1984); *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961). The question is whether the jurors had such fixed opinions at the time of trial that they could not be impartial judges of the defendant's guilt. *Patton,* 467 U.S. at 1035, 104 S.Ct. at 2890–91; *Irvin,* 366 U.S. at 723, 81 S.Ct. at 1642–43. Here, the court asked a series of questions regarding pretrial publicity. Additionally, the court questioned each potential juror about his or her feelings regarding the truthfulness and accuracy of the news reports. The potential jurors were repeatedly asked about their ability to serve impartially. Four potential jurors were dismissed by the court for their professed inability to be impartial. The court dismissed one juror because he had read the article in *City Pages.* After reviewing the record, we are convinced that the district court did not commit manifest error in finding the jurors could be impartial. The voir dire in this case does not indicate juror hostility.

■ The media coverage in this case was not of such a magnitude as to raise a presumption of inherent prejudice. The publicity was not as pervasive nor as negative as that in *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), where the Supreme Court found the setting of the trial to not be inherently prejudicial.[1]

## Substantial Evidence

■ Glaze argues that the government failed to prove he intended to deceive the

---

1. *Murphy* involved a defendant who had become notorious six years before the trial in question for stealing the Star of India sapphire, and living a flamboyant lifestyle. He also acquired a media nickname of "Murph the Surf." The court struck twenty potential jurors because it found they had prejudged the defendant. Twenty more were peremptorily struck.

Secretary as to his true identity under 42 U.S.C. § 408(f). He claims the evidence shows he was attempting to discard his old identity and become a new person. He argues he was not attempting to live two lives at once. Glaze argues the evidence demonstrates a lack of understanding of the Social Security rules but not a knowing attempt to deceive the Secretary, beyond a reasonable doubt.

We find that there was substantial evidence to support the verdict. In addition to Glaze's application for ten duplicate cards under the name of Jesse Sitting Crow, several witnesses testified that Glaze told them he had used several names and different social security numbers. Witnesses included a county welfare employee, an employee of the Hennepin County Department of Public Assistance and a Health and Human Services special agent.

A taped interview was offered in evidence in which Glaze admitted he changed his social security number, that his real name was Billy Richard Glaze, that he had used several names and that he made up social security numbers. Given the amount of direct and circumstantial evidence we cannot say that the finding of intent to deceive was error. We therefore affirm the district court's judgment.