UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles McKNIGHT, also known as
Paul Byrne, also known as Arthur
McGreevy, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Theresa BARNER, also known as
Dolores Michaels, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Anthony Singleton HALL, also known as
Frank Essig, Defendant–Appellant.

Nos. 93–1394, 93–1489 and 93–1766.

United States Court of Appeals,
Eighth Circuit.

March 8, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied in No. 93–1766
April 18, 1994.

Rehearing Denied in No. 93–1489
May 5, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied in No. 93–1394
May 13, 1994.

Counsel who represented the appellant Charles McKnight was Howard A. Shalowitz of Clayton, Missouri.

Counsel who represented the appellant Theresa Barner was Steven Z. Routburg of Creve Coeur, Missouri.

Counsel who represented the appellant Anthony Hall was JoAnn Trogg of Clayton, Missouri.

Counsel who represented the appellee was Dorothy L. McMurtry, Assistant United States Attorney, of St. Louis, Missouri.

Before MAGILL, Circuit Judge, LAY, Senior Circuit Judge, and HANSEN, Circuit Judge.

LAY, Senior Circuit Judge.

 Charles McKnight (McKnight), Theresa Barner (Barner) and Anthony Singleton Hall (Hall) appeal from a judgment entered by the district court[1] on a jury verdict finding them guilty of one count of conspiracy to possess stolen mail and to use unauthorized access devices, in violation of 18 U.S.C. § 371, and one count of using a social security number, not assigned to him or her, in violation of 42 U.S.C. § 408. Hall also appeals his conviction for possession of stolen mail in violation of 18 U.S.C. §§ 2 and 1708 and the enhancement of his sentence made under sections 4A1.1(b) and 3B1.1(b) of the Sentencing Guidelines. Each of the defendants has raised several claims of error which allegedly prejudice their convictions. With the exception of one count of the conviction, we find no merit to any of the defendants' claims. We discuss only the claim relating to the defendants' convictions for

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

misrepresentation of a social security number which was not assigned to him or her. The other claims are either frivolous or fail to constitute error.[2]

**2.** We need only summarily address the other claims, which include:

(a) Defendants claim that the government violated the Speedy Trial Act. We find that the district court did not err in computing the number of days that elapsed before trial for purposes of the Act, and that the seventy-day limitation of the Act was not violated.

(b) McKnight and Barner argue that the district court erred in failing to sever their trial from Hall's. Hall also argues the court erred in denying his motion to sever. McKnight, Barner and Hall were each charged in a single conspiracy and with use of a social security number which had not been assigned to him or her. The evidence as it related to the conspiracy applied to all; the evidence of each defendant's acts in furtherance of the conspiracy·was easily segregated. The evidence relating to the use of a false social security number by each was also easily compartmentalized. Thus, we find that the district court did not err in denying McKnight's and Barner's motions to sever. Hall did not show in either the district court or in this court that his theory of the defense was irreconcilable with the other defendants or that the evidence could not easily be compartmentalized.

(c) Each defendant urges that the United States did not show that any of the overt acts occurred in the Eastern District of Missouri. This claim is frivolous.

(d) The defendants claim there exists insufficient evidence of the conspiracy. The government produced Sherita Gibson who gave direct evidence of the conspiracy. She testified that the members of this conspiracy prepared false identifications, obtained and possessed stolen credit cards, and used the credit cards and false identifications to obtain money and other things of value. She testified that Hall, Hrobowski, Edwards and other individuals travelled in the United States and outside the United States for the purpose of using these credit cards. She stated that Hall recruited her into the conspiracy, taught her how to prepare the false identifications and how to use the credit cards, and received a share of the proceeds from this use. Hall, in turn, shared his proceeds with Edwards. This evidence was sufficient to support the convictions for conspiracy.

(e) Hall argues that the government failed to produce sufficient evidence to support the jury's verdict finding him guilty of possessing a credit card issued to one Joseph Spiers, stolen from the mail. Hall argues that the government did not prove his possession of the stolen credit card because there was insufficient evidence that the piece of luggage from which the credit card was taken belonged to him. We find no merit to this contention. The government produced evidence that the luggage containing the stolen credit card belonged to Hall. Officer Pizzo testified that he found the luggage in the back seat of the car Hall was driving, and that Mildred Hrobowski, who was travelling with Hall in the car, identified the bag as belonging to Hall. From this evidence, the jury could find that Hall had possession of the stolen Spiers credit card.

(f) The defendants claim various evidentiary errors were committed at trial. We have examined each of these claims carefully and find no prejudicial error.

(g) Barner claims the government violated her Fourth Amendment rights by searching her purse. She contends that Sgt. Adams did not have probable cause or reasonable suspicion that she had committed a crime and thus it was unlawful for him to interrogate her. To the contrary, Sgt. Adams's questioning of Barner was lawful. He testified that he did not question Barner until after McKnight had been arrested. He asked Barner for identification to determine if she would be able to drive the car, which McKnight had been driving. If she had proper identification, she would have been permitted to take the car and the car would not have been impounded. Barner replied that her name was "Theresa Smith" and stated that she had no identification.

Sgt. Adams requested that Barner look for some identification and she began to search through her purse for identification. As she searched through her purse, with the aid of the light from his flashlight Sgt. Adams saw what he believed to be a stun gun. He then placed Barner under arrest for possession of the stun gun, which was a violation of a municipal ordinance of Edmundson.

Later, while performing an inventory search of the car, to "make sure there [are] no weapons in it, or expensive property ... and just make a notation of any expensive merchandise or property that would be in the vehicle," Sgt. Adams discovered a New York driver's license with the name "Dolores Michaels" on it. Upon confronting Barner with this license, Barner stated that her real name was Dolores Michaels. She was then arrested for making a false statement.

Sgt. Adams also conducted an inventory of Barner's purse and recorded each item on an evidence receipt provided by the department for this purpose. Edmundson has an unwritten policy requiring that all property be identified and secured. Upon searching her purse, Sgt. Adams discovered various items which were later introduced at trial. The searches did not violate the Fourth Amendment and the introduction of the evidence seized was not error.

(h) McKnight argues that the district court erred in not interviewing two jurors who allegedly saw him momentarily in handcuffs as he was led from the courtroom into the elevator by U.S. Marshals. McKnight also argues that the district court erred in not interviewing a juror who allegedly overheard one of the government's agents discussing this case. It is within the district

In Counts IV, V and VII of the superseding indictment, McKnight, Barner and Hall, respectively, were charged with falsely representing a social security number not assigned to him or her in violation of 42 U.S.C. § 408(a)(7)(B).[3] In each case, the basis for the charge was that the defendant possessed a false identification card with a social security number on it which was not his or her own. The charge against McKnight was based on an investigative reporter identification card in the name of Arthur McGreevy bearing McKnight's picture and purportedly signed by McKnight. The card also had a line which read, "SS # 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." At trial, a handwriting expert testified that McKnight signed the name Arthur McGreevy, and the district manager of the Social Security Administration, Stan Laurent, testified that social security number 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 is not that of McKnight. Laurent testified that he did not know who made the false identification card, or whether the card was ever used.

Similarly, the basis for the charge against Barner was a false employee identification card found in Barner's purse bearing the name Annette Rakowitz and containing a social security number which was not Barner's. The basis for the charge against Hall was a false Illinois driver's license found in Hall's vehicle in the name "Frank Essig" and bearing Hall's photograph and a social security number which was not assigned to Hall. A stolen credit card in the name Frank Essig was also found in the car. For each defendant, the indictment charged that

> the defendant, did knowingly, willfully and with the intent to deceive, falsely represent Social Security Account Number [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 (McKnight), 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 (Barner), 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 (Hall) ] to be the number assigned by the Secretary of Health and Human Services to [him or her], when, in fact, such number was not the Social Security Account Number assigned by the Secretary to [him or her].

> In violation of Title 42, United States Code, Section 408.

The government argued at trial that these pieces of physical evidence were sufficient to allow the jury to conclude that McKnight, Barner and Hall had represented to the person preparing the false cards that the social security numbers printed thereon were theirs or that they had misrepresented the numbers to others. Each defendant objected and moved for a judgment of acquittal as to the false representation counts, arguing that the government had failed to produce any evidence that the defendants had represented the false social security numbers to anyone. The district court responded to the defendants' motions for judgment of acquittal that "I think it is a very marginal situation as to the claims in [Counts IV, V and VII]," but allowed the question to go to the jury. The jury convicted, and the defendants now appeal.

court's discretion to determine whether a momentary sighting of a defendant in handcuffs is sufficiently prejudicial to warrant a mistrial, or other remedial action, and from this record we cannot conclude that the district court abused its discretion in opting not to interview the jurors. See *United States v. Fahnbulleh,* 748 F.2d 473, 477 (8th Cir.1984) (stating that danger of prejudice is slight when juror's view of defendants in custody is brief, inadvertent and outside of courtroom); *United States v. Robinson,* 645 F.2d 616 (8th Cir.) (inadvertent exposure to handcuffed defendant is not inherently prejudicial), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 182 (1981). Neither did the district court abuse its discretion in not interviewing the juror who allegedly overheard a law school intern in the U.S. Attorney's office discussing the case in an elevator. The district court was in a better position to judge the prejudicial effect of the conversation, and the record does not reveal any prejudice suggesting that the district court abused its discretion.

(i) Hall asserts a Fourth Amendment claim on the grounds that probable cause did not exist for his arrest for a minor traffic violation. We have thoroughly reviewed the facts surrounding Hall's stop and find the district court did not err in denying his motion to suppress the evidence seized during the warrantless search of the car he was driving.

(j) Hall argues that the district court impermissibly enhanced his sentence under the Sentencing Guidelines. We find no merit to his contention. We have reviewed the sentence imposed and find that the district court did not err in calculating Hall's enhancements under §§ 4A1.1(b) and 3B1.1(b).

3. 42 U.S.C. § 408(a)(7) was formerly designated § 408(g). The sections were renumbered by Pub.L. No. 101-508, § 5121(b)(3), 104 Stat. 1388-283 (1990).

The issue in this case is, in light of all of the evidence presented, whether a jury rationally could have inferred, beyond a reasonable doubt, that the defendants represented false social security numbers. In deciding whether evidence is sufficient to withstand a motion for judgment of acquittal, we must view the evidence and all reasonable inferences in the light most favorable to the government. *United States v. Gordon*, 974 F.2d 97, 100 (8th Cir.1992). We find that the government produced insufficient evidence to support a conviction under the statute.

Section 408(a)(7) provides:

> Whoever ... for the purpose of causing an increase in any payment authorized under this subchapter (or any other program financed in whole or in part from Federal funds), or for the purpose of causing a payment under this subchapter (or any such other program) to be made when no payment is authorized thereunder, or for the purpose of obtaining (for himself or any other person) any payment or any other benefit to which he (or such other person) is not entitled, or for the purpose of obtaining anything of value from any person, or for any other purpose ... (B) with intent to deceive, falsely represents a number to be the social security account number assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person ... shall be guilty of a felony....

42 U.S.C. § 408(a)(7). From the statutory language, the elements of a 42 U.S.C. § 408(a)(7)(B) violation are easy to discern. The government must allege and prove that the defendant (1) for any purpose, (2) with the intent to deceive, (3) represents a particular social security account number to be his or another person's, (4) which representation is false. *See United States v. Darrell*, 828 F.2d 644, 647 (10th Cir.1987) (setting forth these four elements). Defendants urge that the government failed to produce sufficient evidence of the third element, to wit, evidence that the defendants ever *represented* the false social security numbers to anyone.

This case is unlike those that have affirmed convictions for actual misrepresentations made by defendants. *See, e.g., United States v. Barel*, 939 F.2d 26, 34 (3d Cir.1991) (affirming conviction where defendant used false social security number to open bank accounts); *Darrell*, 828 F.2d at 647–48 (affirming conviction where defendant used false social security number to obtain loan and gave police false identification to conceal identity); *United States v. Holland*, 880 F.2d 1091, 1095 (9th Cir.1989) (affirming conviction for use of false social security numbers to obtain illegitimate paychecks). Indeed, the cases uniformly require some evidence, either direct or circumstantial, of the *use* of a false social security number to uphold a conviction under § 408(a)(7)(B). *E.g., United States v. Manning*, 955 F.2d 770, 773 (1st Cir.1992) ("To establish that [the defendant] violated [the statute], the government needed to prove that [the defendant] *used* a false social security number ... for any purpose, with the intent to deceive." (emphasis added)).[4]

In *United States v. Doe*, 878 F.2d 1546 (1st Cir.1989), a case factually similar to the present case,[5] the First Circuit reversed a convic-

---

**4.** In *United States v. Glaze*, 866 F.2d 253 (8th Cir.1989), a conviction was upheld where the defendant applied for ten duplicate cards using false names and birthdates and the defendant admitted making up social security numbers. Judge Magill relies upon *Glaze* in his concurring opinion. However, *Glaze* involved the former § 408(f), now § 408(a)(6), which reads:

> Whoever ... willfully, knowingly, and with intent to deceive the Secretary as to his true identity (or the true identity of any other person) furnishes or causes to be furnished false information to the Secretary with respect to any information required by the Secretary in connection with the establishment and mainte-

nance of the records provided for in section 405(c)(2) of this title ... shall be guilty of a felony....

*Id.*

The charge in the present case relates to misrepresentation under § 408(a)(7)(B), which requires proof of a false *representation* to another person, rather than the giving of false information to the Secretary, which is the object of § 408(a)(6).

**5.** In *Doe*, a defendant was arrested by the Coast Guard. Upon the defendant's arrest, a Coast Guard officer demanded the defendant's personal items so that he could take custody of them.

tion, stating that "we can find no evidence whatsoever in the record that [the defendant] ... falsely represented that this social security number was his," when a defendant was merely in possession of a false social security card bearing a false social security number upon his arrest.

■ Moreover, it is clear that Congress, by using the term represent, meant to proscribe the *use*, not merely the possession, of a false social security number. The term "represent" connotes a positive action, not merely passive possession. Indeed, the legislative history of section 408 reflects Congress's principal concern with forbidding the use of a fraudulent number.[6] This reading is buttressed when one considers the instances in which Congress has made possession an offense. For example, the subsection of the statute immediately following the section at issue makes it a crime when one "possesses a

---

One of the defendant's personal items was a social security card in the defendant's name, but with a social security number that belonged to a different person. The defendant was charged under 42 U.S.C. § 408(g)(2) (now renumbered as § 408(a)(7)(B)) for false representation of a social security number.

On appeal, the First Circuit reviewed the defendant's conviction, stating that:
The Government's evidence consisted of the following three items:
a) a social security card with the [defendant's name] and the number 284–52–4810;
b) a certification from the federal Department of Health and Human Services that this number belonged, not to [the defendant], but to a different person;
c) testimony from Coast Guard officer Cruz, stating:
Q: In what way or fashion did you obtain that Social Security card from [the defendant]?
A: ... I asked [him] to give [me his] ... personal items so I could take custody of them.
*Doe*, 878 F.2d at 1553. The court held that "[w]e must reverse the conviction ... for the simple reason that we can find no evidence whatsoever in the record that [the defendant], 'on or about November 19, 1986' falsely represented that this social security number was his, with an intent to deceive," as had been charged in the indictment. *Id.* The court reasoned, first, that the events in question had taken place on November 14, 1986, and thus the defendant could not have committed the offense on the date charged in the indictment, November 19. The court went on alternatively to hold, however, that "even if one were, for the sake of argument, to consider the date, November 19, a slip of the pen, the record contains little, if any, evidence that [the defendant] *ever* misused the card with 'intent to deceive.' It reveals only that [the defendant] handed the card over to [the officer] when requested to do so after his arrest." *Id.* at 1554 (citation omitted).

6. Section 408(g) (now renumbered § 408(a)(7)) was first adopted in 1972. The original version was proposed to protect the integrity of the Social Security program by forbidding the use of a fraudulent number to illicitly obtain or increase one's federal benefits. *See* H.R.Conf.Rep. No.

1605, 92d Cong., 2d Sess. (1976), *reprinted in* 1972 U.S.C.C.A.N. 4989, 5370, 5373. That version read:
Whoever ... for the purpose of obtaining (for himself or any other person) any payment or any other benefit to which he (or such other person) is not entitled ... with intent to deceive, falsely represents a number to be the social security account number assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person ... shall be guilty of a misdemeanor....
42 U.S.C. § 408(g)(2) (Supp. II 1973). When Congress found that social security numbers were being abused in other contexts, a 1976 amendment added the clause "for any other purpose," to § 408(g) because "social security numbers should not be wrongfully used for any purpose." The amendment made "the willful, knowing and deceitful use of a social security number a misdemeanor for all purposes, rather than only for purposes related to benefit payments." S.Rep. No. 938, 94th Cong., 2d Sess. 391 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2897, 3439, 3820–21.

In 1981, Congress amended the text of the statute again by adding the clause, "or for the purpose of obtaining anything of value from any person," resulting in the current version of 42 U.S.C. § 408(a)(7). That version reads:
Whoever ... for the purpose of obtaining (for himself or any other person) any payment or any other benefit to which he (or such other person) is not entitled, or for the purpose of obtaining anything of value from any person, or for any other purpose ... with intent to deceive, falsely represents a number to be the social security account number assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person ... shall be guilty of a felony....
*Id.* The 1981 addition was meant to reach the sale of stolen or counterfeited social security cards. *See* H.R.Conf.Rep. No. 409, 97th Cong., 1st Sess. 15 (1981), *reprinted in* 1981 U.S.C.C.A.N. 2681, 2687–88. The latest addition broadened the "[c]riminal penalties [that were

social security card or counterfeit social security card with intent to sell or alter it." 42 U.S.C. § 408(a)(7)(C); *see also* 18 U.S.C. § 1028(a)(3) & (4) (making possession of false identification for particular purposes a crime). Had Congress intended to make mere possession of identification bearing a false social security number a crime, it certainly could have. The statutory language and the legislative history of section 408(a)(7)(B) indicate, however, that Congress was interested in proscribing the *use* of a false social security, not mere possession. Yet these defendants, who merely possessed false identification, were charged with false representation.

■ In the present case, there exists insufficient direct or circumstantial evidence of use. Under the facts presented, proof of possession without more fails to create any credible inference that the social security numbers on the cards were misrepresented to anyone. We find unconvincing the government's argument that the jury could infer that the defendants must have represented the social security numbers to the person making the fraudulent cards.[7] There was no evidence adduced by the government as to who printed the cards. In this regard, the evidence did not show whether the defendants printed the cards themselves or ob-

tained the false cards from third persons. Moreover, if the defendants obtained the cards from third persons, there was no evidence presented as to whether the defendants provided the third persons with false social security numbers, or whether the defendant simply instructed third person to "make up" numbers. In short, there is no reasonable inference that the jury could draw from the defendants' possession of the cards that would sustain a conviction for misrepresentation of a social security number with intent to deceive.

■ We find, therefore, that the judgments of conviction on counts IV (McKnight), V (Barner) and VII (Hall) regarding misrepresentation of a social security number must be reversed. The $50.00 special assessment on each of these convictions is vacated. We note, however, that each of the defendants received sentences on the false misrepresentation counts that are being served concurrently with convictions on other counts which, for the reasons articulated above, are affirmed. Because the sentences in Counts IV, V and VII were ordered to be served concurrently to the sentences on the other counts, now affirmed, it is not necessary to remand for resentencing.[8]

Affirmed in part and reversed in part.

---

already provided for] *using* someone else's social security number." *Id.* at 2687 (emphasis added).

7. The government cites no authority for this contention and we reject it. The representation provisions of § 408 are clearly aimed at prohibiting the fraudulent use of social security numbers. There are statutory provisions which relate to obtaining or buying false or fraudulent social security cards, *see* 42 U.S.C.A. § 408(a)(7)(C), and to possessing false identification documents. *See* 18 U.S.C. § 1028. The defendants were not charged under these provisions.

8. Judge Lay would remand the case to the district court to determine whether the vacation of the misrepresentation counts would affect the sentences imposed by the district court. The district court used the top of the Guideline range in rendering the concurrent sentences in this case. It seems only logical that if a count of conviction is reversed, the Guideline range selected by the district court at the time of the original sentence could be affected. A district judge might select a lower or middle range if a defendant was convicted of only one offense.

However, if there are multiple offenses, many district judges will render concurrent, rather than consecutive sentences, and increase the sentence to the upper end of the range. It may be that the district judge would not decrease the sentence in this case, but we are not in a position to know. What possible harm is there in asking the district judge to review his own judgment? If the judge does not feel he would alter the Guideline range, the judge may simply say so and no resentencing proceeding need take place. However, the district court should be the judge of that.

Several cases have discussed the desirability of remand for resentencing when concurrent sentences are vacated. This policy was explained in several pre-Guidelines decisions, but the governing principle still controls. In *United States v. Shue*, 825 F.2d 1111, 1114 (7th Cir.1987), the court stated:

When a defendant is convicted of more than one count of a multicount indictment, the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent. When, on appeal, one or more counts of a multicount conviction

**1146**

MAGILL and HANSEN, Circuit Judges, jointly concurring.

We concur in all but footnote eight of Judge Lay's majority opinion. We write separately to make explicit that possession of an identification card bearing a false social security number can, in some instances, provide a sufficient predicate for a jury to properly infer that a defendant falsely represented a social security number in violation of 42 U.S.C. § 408(a)(7)(B). We also write to explain why a majority of this court declines to remand this case to reconsider defendants' sentences.

The panel is in agreement that when all of the evidence is considered in the light most favorable to the jury's verdict, it is nevertheless insufficient to sustain that verdict. Hence, we agree this court should vacate defendants' convictions for violation of 42 U.S.C. § 408(a)(7)(B), together with each of the $50 special assessments imposed thereon. In some instances, however, possession alone can serve as sufficient evidence for a jury to rationally infer that an individual represented a false social security number in violation of § 408(a)(7)(B).

For example, an individual could apply for and receive at a social security office a duplicate social security card by using a false name and false social security number.[1] That person has violated § 408(a)(7)(B) the moment he makes the false representation concerning his alleged social security number, even before he makes any subsequent *use* of the card.[2] A jury could reasonably convict a defendant who possessed the false duplicate card—without direct testimony that defendant made a false representation to procure the card—because it could infer that the defendant received the social security card through false representations.[3] Thus, in some instances, possession without direct proof of use can justify a reasonable jury inference that a defendant violated § 408(a)(7)(B).

We also write separately to explain why a majority of this court declines to remand this case for resentencing.

Each defendant's convictions (three for Hall, two each for McKnight and Barner) were grouped together and treated as if they were one offense. *See* U.S.S.G. § 3D1.2(d). With or without the now-vacated convictions, each defendant has a base offense level of

---

are reversed and one or more counts are affirmed, the result is an "unbundled" sentencing package. Because the sentences are interdependent, the reversal of convictions underlying some, but not all, of the sentences renders the sentencing package ineffective in carrying out the district court's sentencing intent as to any one of the sentences on the affirmed convictions.

*Id.* (citation omitted).

As the First Circuit stated in *United States v. Pimienta–Redondo*, 874 F.2d 9, 14 (1st Cir.1989): When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal. *Id. See also United States v. Briggs*, 920 F.2d 287, 296 (5th Cir.1991) (citing *Jerkins v. United States*, 530 F.2d 1203 (5th Cir.1976)) ("Unless it can be ascertained from the record ... that the District Court's sentence on a valid conviction was not affected by a subsequently invalidated conviction on another count of the indictment, the defendant must be resentenced on the valid conviction").

1. The quality of a false document can create a strong inference that a defendant acquired the document through a misrepresentation to a third party. For example, if an accused is caught with a United States passport that is perfect, save a false name and social security number, a reasonable inference for a jury to draw is that the accused procured the passport through false representations to a third party, i.e., government officials. *Cf. United States v. Gomes*, 969 F.2d 1290, 1293 (1st Cir.1992) (describing four distinct safety features of social security cards designed to "foil counterfeiters" and to distinguish bogus cards from cards procured from the Social Security Administration).

2. An individual who falsely represents his name and social security number to the Secretary violates 42 U.S.C. § 408(a)(6). *See Glaze v. United States*, 866 F.2d 253, 255 (8th Cir.1989) (per curiam). That same individual, who has falsely represented his name and social security number, also has violated § 408(a)(7)(B). The jury can infer an intent to deceive a third party from the fact that the individual has represented a false name and false social security number to the third party preparing the social security card.

3. The jury could infer a positive action—false statements to third parties—from evidence of possession. *Cf. ante*, at —— (stating that the "term 'represent' connotes a positive action, not merely possession").

four. Additionally, none of the adjustments made to the base offense level rely on the now-vacated convictions. Thus, the district court's use of the now-vacated convictions had no effect on the determination of any of the defendants' Guidelines ranges.

We would be required to remand this case if we were to determine that the sentences were "imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(f)(1). We do not see any "violation of law" arising from the district court's consideration of the defendants' now-noncriminal conduct. The facts concerning their possession of the false identification materials would still have been relevant information for the court to consider at sentencing time because of their relevance to the other counts of conviction. *See McMillan v. Pennsylvania*, 477 U.S. 79, 84–86, 106 S.Ct. 2411, 2415–16, 91 L.Ed.2d 67 (1986); *United States v. Galloway*, 976 F.2d 414, 425 (8th Cir.1992) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 1420, 122 L.Ed.2d 790 (1993); *see also* 18 U.S.C. § 3661. The question, then, is whether the sentences were imposed "as a result of an incorrect application of the sentencing guidelines."

It is important to remember that this is *not* a departure case. "When a district court has not intended to depart from the Guidelines, a sentence is imposed 'as a result of' an incorrect application of the Guidelines when the error results in the district court selecting a sentence from the wrong guideline range." *Williams v. United States*, —— U.S. ——, ——, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992). It is only "[w]hen a district court has intended to depart from the guideline range [that] a sentence imposed 'as a result of' a misapplication of the Guidelines if the sentence would have been different but for the district court's error." *Id.* Because these defendants do not and cannot contend that the now-vacated convictions caused the district court to apply the wrong Guidelines range, and because they do not and cannot challenge any departure from the Guidelines range because this is not a departure case—as was the case in *Williams*—we need not inquire whether the convictions we vacate

today "affect[ed] the district court's selection of the sentence imposed." *Id.* at ——, 112 S.Ct. at 1121; *see also United States v. West*, 15 F.3d 119, 122 (8th Cir.1994) (affirming sentence imposed for two convictions where one conviction was affirmed and other conviction was reversed); *cf. United States v. Olunloyo*, 10 F.3d 578, 581 (8th Cir.1993) (declining to analyze any issue concerning 36–month sentence when court had affirmed defendant's concurrent 88–month sentence because "a ruling in [defendant's] favor would not reduce the time [defendant] is required to serve nor does imposition of this sentence prejudice him in any way").

In sum, the district court selected the proper Guidelines range and properly imposed a sentence within that range. Thus, we cannot conclude that defendants' sentences were imposed as a result of an incorrect application of the Guidelines and a remand is not required.