# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 04-2341

————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Eugene Darwin Porter, | * | |
| | * | |
| Appellant. | * | |

————————

Submitted: December 15, 2004
Filed: June 2, 2005

————————

Before LOKEN, Chief Judge, MORRIS SHEPPARD ARNOLD and RILEY,
Circuit Judges.

————————

RILEY, Circuit Judge.

A jury convicted Eugene Darwin Porter (Porter) of one count of being a felon in possession of a firearm (Count 1), in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and of five counts of falsely representing a social security number (Counts 2 - 6), in violation of 42 U.S.C. § 408(a)(7)(B). The district court[1] entered judgment against Porter, and sentenced him to a total of 180 months' imprisonment. Porter

———————————

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

appeals, contending (1) insufficient evidence supports the convictions on Counts 2 through 6; (2) the United States Sentencing Guidelines (Guidelines) are unconstitutional; (3) the district court violated Porter's Sixth Amendment rights by sentencing him based on judge-made findings; and, (4) regardless of the constitutionality of the Guidelines, the district court misapplied them in sentencing Porter. We affirm Porter's convictions and sentence.

## I.     BACKGROUND

On February 9, 2003, Benjamin Porter (Benjamin) awoke around 5:00 a.m. to the sound of bullets ripping through his apartment. When Benjamin looked out a front window, he saw his father, Porter, driving away. Porter was charged with (Count 1) and convicted of being a felon in possession of a firearm. Porter does not challenge that conviction; instead, he challenges the sufficiency of the evidence to support his convictions on Counts 2 through 6 for falsely representing a social security number. Accordingly, we will discuss the evidence adduced at trial on those five counts.

Benjamin testified at trial that he had been at Porter's apartment before the shooting and had seen (1) "applications for credit cards that had my social security number on it that my father had signed," and (2) "a US Cellular phone bill that had my name on it." Benjamin testified he moved out of his father's apartment because he was so upset his father was using Benjamin's social security number without his knowledge to open accounts. Benjamin also testified that, about a week or two before the shooting, he told Porter he "knew everything that was going on," informing Porter that Benjamin knew Porter was using Benjamin's social security number. When asked why Porter may have shot at Benjamin, Benjamin testified Porter was angry with Benjamin "[b]ecause [Benjamin] had found out about [Porter] using [Benjamin's] social security number, and that [Benjamin] had been into the bank and asked the bank about it, and that [Benjamin] had been to the police station and reported it to them."

According to the government, Porter used Benjamin's social security number to apply for credit cards and mobile telephone service. The government produced a number of exhibits for the jury to consider for Counts 2 through 6. To prove Count 2, the government submitted Exhibit 1, a credit card application dated August 23, 1999, and obtained from the business records of Capital One Bank. This credit card application was completed using (1) Benjamin's name, (2) Benjamin's social security number, (3) Benjamin's purported signature, (4) a date of birth of August 13, 1978, and (5) Porter's address. Benjamin's date of birth is August 13, 1982, while Porter's date of birth is January 14, 1943. Benjamin testified he did not "have anything to do with filling out this application." Benjamin also testified he recognized the font used on the application as one from Porter's typewriter, and he recognized his father's handwriting on the application, based on seeing his father's handwriting a number of times in the past.

To prove Count 3, the government submitted Exhibit 2, a credit card application dated November 8, 1999, and obtained from the business records of Capital One Bank. This credit card application was completed using (1) Benjamin's name, (2) Benjamin's social security number, (3) Benjamin's purported signature, (4) a date of birth of August 13, 1978, and (5) Porter's address. Benjamin testified he did not sign, or have anything to do with, this credit card application. Benjamin also testified he recognized his father's handwriting on the application.

To prove Count 4, the government submitted Exhibit 8, a U.S. Cellular service agreement dated January 4, 2000, and obtained from the business records of U.S. Cellular. This telephone service agreement was completed at the store using (1) Benjamin's name, (2) Benjamin's social security number, (3) Benjamin's purported signature, (4) a date of birth of January 14, 1943, and (5) Porter's address. Benjamin testified he did not "have anything to do with filling this item out," and he recognized his father had signed Benjamin's name on the application.

-3-

To prove Count 5, the government submitted Exhibit 4, a credit card application dated June 4, 2002, and obtained from the business records of Capital One Bank. This credit card application was completed using (1) Benjamin's name, (2) Benjamin's social security number, (3) Benjamin's purported signature, (4) a date of birth of August 13, 1982, and (5) Porter's address. Benjamin testified he did not sign this credit card application, but could tell his father signed the application. Benjamin testified his father's typewriter was used to complete the application. Benjamin also testified he had nothing "to do with the creation of Government's Exhibit No. 4."

To prove Count 6, the government submitted Exhibit 5, a credit card application dated July 30, 2002, and obtained from the business records of Capital One Bank. This credit card application was completed using (1) Benjamin's name, (2) Benjamin's social security number, (3) Benjamin's purported signature, (4) a date of birth of January 14, 1943, and (5) Porter's address. Benjamin testified he did not sign this credit card application. Benjamin also testified he noticed his father had signed Benjamin's name to the application. Benjamin testified he did not have "anything to do with filling out this application."

At trial, the government introduced Exhibit 53, a plea agreement Porter and his attorney signed before deciding to proceed to trial. The plea agreement contained the following stipulated facts:

> On or about July 30, 2002, in the Northern District of Iowa, defendant submitted an application for a credit card to Capital One credit card service. On the application, defendant fraudulently used his son's name (Benjamin Porter) and his son's social security number. Defendant used the social security number in order to conceal his true identity and with intent to deceive. Defendant submitted similar credit card applications, each bearing his son's social security number, on August 23, 1999, November 8, 1999, and June 4, 2002. Also, on

January 4, 2000, fraudulently used his son's social security number on
an application to US Cellular for mobile telephone service.

The government also produced other exhibits displaying Benjamin's actual signature, including a copy of Benjamin's actual social security card, and also exhibits containing Porter's actual signature.

Porter testified he does not know his social security number without looking it up. Porter also testified he did not use his typewriter to prepare Exhibit 1, and his handwriting was not contained on Exhibits 1, 2, 5 and 8. Porter also submitted evidence showing he had acquired credit cards and telephone service in his own name, arguing he had no reason to use Benjamin's information to acquire these services.

A jury convicted Porter of Counts 2 through 6. Based on the Guidelines, the district court applied a four-level enhancement under U.S.S.G. § 2K2.1 for using a firearm in connection with another felony offense; a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice; and a seven-level upward departure under U.S.S.G. § 5K2.6 based on Porter's discharge of a high-powered weapon into Benjamin's home. The district court made "the specific finding by a preponderance of the evidence that Defendant, using a high-powered firearm and ammunition, shot several live rounds through the walls of his son's residence. Had it not been for the bathtub on the victim's porch deflecting some of the fire power, there could have been a death or life-threatening injury." Finally, the district court announced an upward departure for "underrepresentation of criminal history under [section] 4A1.3 . . . would be a valid upward departure as well," but concluded the departure under section 5K2.6 was appropriate by itself (as the sentence reached the statutory maximum) such that the use of section 4A1.3 was unnecessary. Based on these sentencing determinations, the district court sentenced Porter to a total of 180 months' imprisonment. Specifically, the district court sentenced Porter to the

statutory maximum of 120 months' imprisonment on Count 1 and the statutory maximum of 60 months' imprisonment on Counts 2 through 6. The district court ordered the 60-month sentences for Counts 2 through 6 to run concurrently to each other, but consecutively to the 120-month sentence for Count 1. The district court noted on the record that it believed "this sentence is appropriate under all the facts and circumstances of this case."

## II.    DISCUSSION
### A.    Sufficiency of the Evidence

Porter contends insufficient evidence supports the convictions on Counts 2 through 6. Porter argues "[t]he only evidence submitted in support of these charges was the uncorroborated testimony of the defendant's son, Ben Porter, which defendant took the stand to dispute." Porter confronts "a high hurdle" when attacking the sufficiency of the evidence supporting his convictions on Counts 2 through 6, "as we must employ a very strict standard of review on this issue." United States v. Cook, 356 F.3d 913, 917 (8th Cir. 2004). "We must view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." Id. (citation omitted). We will reverse only if we conclude no reasonable jury could have found Porter guilty. Id.

The jury convicted Porter of violating the following statute:

> Whoever . . . for the purpose of obtaining (for himself or any other person) any payment or any other benefit to which he (or such other person) is not entitled, or for the purpose of obtaining anything of value from any person, or for any other purpose . . . with intent to deceive, falsely represents a number to be the social security account number assigned by the Commissioner of Social Security to him or to another person, when in fact such number is not the social security account number assigned by the Commissioner of Social Security to him or to

such other person . . . shall be guilty of a felony and upon conviction thereof shall be fined under Title 18 or imprisoned for not more than five years, or both.

42 U.S.C. § 408(a)(7)(B). To convict Porter under section 408(a)(7)(B), the government had to prove beyond a reasonable doubt that Porter, (1) for any purpose, (2) with the intent to deceive, (3) represented a social security number to be his or another person's, (4) which representation was false. United States v. McKnight, 17 F.3d 1139, 1143 (8th Cir. 1994).

We conclude the jury had more than sufficient evidence upon which to convict Porter for falsely representing a social security number. As detailed in the background section, the evidence supports the jury's verdict that Porter submitted four applications for credit cards and one application for mobile telephone service using Benjamin's name and social security number. This conclusion is buttressed by Benjamin's testimony, the applications obtained from the business records of Capital One Bank and U.S. Cellular, Porter's own admissions in his plea agreement, and Porter's early-morning shooting spree at Benjamin's residence a week or two after Benjamin confronted Porter about misusing Benjamin's social security number. Although Porter certainly told his side of the story, the jury obviously did not believe him. We enjoy no greater vantage point on appeal than did the jury at trial, and we have no right to usurp the jury's role to judge the facts and make credibility findings. United States v. Dabney, 367 F.3d 1040, 1043 (8th Cir. 2004) ("Regardless of how we feel reading the record, we are utterly unable to judge the credibility of trial witnesses, including [the defendant]'s. It is axiomatic that we do not review questions involving the credibility of witnesses, but leave credibility questions to the jury.").

Porter contends the evidence allows only an inference that he merely possessed Benjamin's social security number. While we agree mere possession of a social

security number cannot sustain a conviction under section 408(a)(7)(B), see McKnight, 17 F.3d at 1145 (holding mere possession of a false social security number does not violate section 408(a)(7)(B)), we disagree the evidence established that Porter merely possessed Benjamin's social security number. Indeed, Porter's own damaging admissions in his plea agreement, as well as the evidence at trial, show Porter fraudulently used Benjamin's name and social security number when submitting applications for credit relationships with Capital One Bank and U.S. Cellular. Porter even admitted using Benjamin's "social security number in order to conceal his true identity and with intent to deceive." We are hard-pressed to understand Porter's contention that the jury had insufficient evidence upon which to convict. We affirm the jury's convictions on Counts 2 through 6.[2]

## B. Sentencing Issues

Porter claims he was sentenced in violation of his Sixth Amendment right to a jury trial, as recognized in Blakely v. Washington, 124 S. Ct. 2531 (2004) (declaring Washington's sentencing system unconstitutional). Specifically, Porter contends he is entitled to be sentenced based only on the findings of the jury. Porter argues the district court erroneously increased his sentence for obstructing justice, using a firearm in connection with a felony, and discharging a high-powered weapon into Benjamin's home. According to Porter, the Guidelines should only be applied to the jury's findings, resulting in a Criminal History Category of II and an Offense Level of 14, yielding a Guidelines sentencing range of 18 to 24 months'

---

[2]Porter filed a motion for a new trial, which the district court denied. To the extent Porter argues the district court abused its discretion in denying Porter's motion for a new trial, we reject that argument. Sufficient evidence supports the jury's verdict, and the district court did not abuse its wide discretion in denying Porter's motion for a new trial because Porter's "conviction does not evince a serious miscarriage of justice such that we must reject the jury's verdict or the district court's sense of justice." United States v. Walker, 393 F.3d 842, 848 (8th Cir. 2005).

imprisonment. Thus, Porter contends he can be sentenced only to a maximum of 24 months' imprisonment.

During the pendency of this appeal, the Supreme Court determined how Blakely applies to the Guidelines when the court issued the much-anticipated Booker decision. See United States v. Booker, 125 S. Ct. 738 (2005). In Booker, the Supreme Court excised two provisions of the Sentencing Reform Act of 1984, effectively creating an advisory Guidelines system in which a sentencing court must "consider Guidelines ranges," but the advisory system also "permits the court to tailor the sentence in light of other statutory concerns as well." Id. at 756-57 (citing 18 U.S.C. § 3553(a)). Under the advisory Guidelines system, courts of appeal review sentences for unreasonableness. Id. at 765.

We have recognized "[t]he standard of review will be critically important in most appeals involving Booker issues." United States v. Rodriguez-Ceballos, No. 04-3390, 2005 WL 1131672, at *3 (8th Cir. May 16, 2005). Indeed, the standard of review is decisive in this case. Porter argues he preserved the Blakely issue at sentencing. However, he recognizes he "did not specifically object on the authority of Apprendi[3] and the Sixth Amendment right to jury trial in the sentencing hearing itself." Alternatively, Porter contends even a plain-error review would entitle him to relief based on Blakely. The government asserts Porter never raised Apprendi or Blakely issues in the district court, requiring application of plain-error review. After reviewing the record, we agree with the government–Porter did not preserve a Sixth Amendment objection below. Thus, we review Porter's sentence for plain error, United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc) (failure to preserve issue mandates plain-error review), which is a demanding standard not easily met. See Rodriguez-Ceballos, 2005 WL 1131672, at *3 (citing United States v. Dominguez Benitez, 124 S. Ct. 2333, 2340 (2004)).

---

[3]Apprendi v. New Jersey, 530 U.S. 466 (2000).

Because Porter failed to preserve a <u>Blakely</u> issue (now considered a <u>Booker</u> issue), he must prove plain error, which follows the four-part test discussed in <u>United States v. Olano</u>, 507 U.S. 725, 732-36 (1993). To establish plain error, Porter must establish "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." <u>Johnson v. United States</u>, 520 U.S. 461, 467 (1997) (internal quotations omitted) (alteration in original). If Porter establishes these three conditions, we may exercise our discretion to remand for resentencing "if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." <u>Id.</u> (internal quotations omitted) (alteration in original).

We can assume the district court "committed <u>Booker</u> error by applying the Guidelines as mandatory, and the error is plain, that is, clear or obvious, at this time," in light of <u>Booker</u>. <u>Pirani</u>, 406 F.3d at 550. The critical issue is whether the <u>Booker</u> error affected Porter's substantial rights. To meet this third <u>Olano</u> condition, Porter must establish "a 'reasonable probability' that the district court would have imposed a more favorable sentence under the advisory sentencing guidelines regime mandated by <u>Booker</u>." <u>Id.</u> at 547.

We conclude nothing in the record indicates the district court would have imposed a more favorable sentence had it known the Guidelines were advisory only. Indeed, the district court indicated Porter's "sentence is appropriate under all the facts and circumstances of this case." Furthermore, the district court reserved the opportunity to enhance Porter's sentence because the Guidelines range underrepresented Porter's criminal history. Because Porter has not shown any likelihood, much less a reasonable probability, that the district court would have imposed a more favorable sentence under an advisory Guidelines system, we find no plain error.

Regardless of the success of his <u>Blakely</u>/<u>Booker</u> argument, Porter also maintains the district court misapplied the Guidelines in sentencing him. Porter

contends "the district court abused its discretion by departing upward seven levels for discharging a firearm at his son's residence." Porter argues the district court impermissibly added seven levels to the offense level for discharging a firearm at Benjamin's residence, which already had been considered in the four-level enhancement for using a firearm in connection with another felony. Specifically, "Porter concedes that the departure for discharging a firearm was based on a permissible factor, as this is authorized by [U.S.S.G. §] 5K2.6. However, [Porter argues] the extent of the departure was unreasonable because in reality the upward departure was 11 levels and resulted in a sentence that is out of step with the punishment for similar offenses."

Even after Booker, "[w]e review the [interpretation and] application of the sentencing guidelines de novo and review the district court's factual findings for clear error." United States v. Mathijssen, 406 F.3d 496, 498 (8th Cir. 2005) (concluding "the unreasonableness standard articulated by the Supreme Court in Booker applies only to the district court's determination of the appropriate ultimate sentence to impose based on all the factors in 18 U.S.C. § 3553(a), not to the district court's interpretation of the meaning and applicability of the guidelines themselves").

The district court imposed a seven-level upward departure under section 5K2.6, which empowered the district court to increase Porter's sentence based on the following language:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

U.S.S.G. § 5K2.6. As noted by the district court, Porter's early morning shooting spree could have killed Benjamin had a fortuitously placed bathtub not been present to save Benjamin's life. Porter's firing of a high-powered weapon into Benjamin's residence, potentially killing Benjamin, clearly fits within section 5K2.6's plain language. We have little difficulty concluding the district court did not misapply section 5K2.6 in sentencing Porter.

We also see nothing in the record or in Porter's arguments indicating the district court erroneously applied the enhancements for obstruction of justice or for the use of a firearm in connection with a felony. Instead, we believe these Guidelines enhancements specifically apply to Porter's conduct and are supported by the record. See U.S.S.G. §§ 2K2.1(b)(5) (requiring a 4-level enhancement for using a firearm in connection with another felony offense); 3C1.1 (requiring a 2-level enhancement for obstructing the administration of justice).

In addition to concluding the district court did not misinterpret or misapply the Guidelines, we also conclude Porter's ultimate sentence was not unreasonable. Not only does Porter's sentence comport with the Guidelines, the sentence also satisfies the Booker test for reasonableness as it faithfully follows the congressional charge to consider other goals in sentencing. See, e.g., 18 U.S.C. § 3553(a)(1) (requiring courts to consider "the nature and circumstances of the offense and the history and characteristics of the defendant"); 3553(a)(2)(A)-(C) (requiring courts to consider the need to impose a sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant"); 3553(a)(3) (requiring courts to consider "the kinds of sentences available").

## III. CONCLUSION

For the reasons discussed, we affirm Porter's convictions and sentence.

_____